STATE OF MISSOURI at the relation of GEORGE W. LANE and WM. S. BEDAL, Executors under the Will of SARAH L. G. WILSON, v. CLIFFORD CORNELI, HENRY W. J. ROTT, HENRY L. MUELLER, M. L. NEAF, JOHN M. CRUTSINGER and WALTER E. MILLER, composing the Board of Equalization of St. Louis County, Appellants.— 149 S. W. (2d) 815.

Division One, April 18, 1941.

934

*Erwin F. Vetter* for appellants; *Walter Wehrle, amicus curiae,* for Town School District of Clayton; *Glen Mohler, amicus curiae,* for City of Clayton.

*J. M. Blayney, Harold S. Cook* and *Rodney M. Fairfield* for respondents.

935

DALTON, C.—Relators, respondents here, applied for and obtained from the Circuit Court of St. Louis County a writ of certiorari directed to the members of the county board of equalization to review certain proceedings of the board with reference to an order for an assessment of personal property against the estate of Mrs. N. B. Wilson, deceased. Upon a hearing the circuit court quashed the order of the board of equalization, as entered of record April 17, 1939, and respondents below have taken the necessary steps to present the matter on appeal.

We have jurisdiction because the appeal is one "involving the construction of the revenue laws of this State." [Sec. 12, Art. 6, Constitution, 15 Mo. Stat. Ann. 561; State ex rel. Martin v. Childress, 345 Mo. 495, 499, 134 S. W. (2d) 136, 138; State ex rel. Harrison County Bank v. Springer, 134 Mo. 212, 220, 35 S. W. 589.]

The petition for the writ of certiorari, among other things, recites that George W. Lane and Wm. S. Bedal are the duly appointed, qualified and acting executors of the estate of Sarah L. G. Wilson, who died November 19, 1938; that letters testamentary were issued to them on November 23, 1938; that "relators assume that said Sarah L. G. Wilson is the same person referred to in the order of the board of equalization hereinafter set forth as Mrs. N. B. Wilson;" and that respondents, as members of the Board of Equalization of St. Louis County, held an adjourned meeting on April 17, 1939, and entered the following order:

"It is ordered by the Board that the following described personal property in Clayton School District of the Estate of Mrs. N. B. Wilson, deceased, be added to the Assessor's books in the amount of $1,303,013.00 in lieu of $200.00 arbitrary assessment fixed by the Assessor, as follows, to-wit: Bonds $1,249,986.00; Notes $5,619.00; Cash $30,887.00; Goods and Chattels $15,021.00; Miscellaneous, $1,500.00.

"It is further ordered that the Clerk notify Wm. S. Bedal and Geo. W. Lane, Attorneys for the estate of Mrs. N. B. Wilson, to appear on the 24th day of April, 1939, and show cause, if any they have, why said assessment should not be made."

It was further alleged that an adjourned meeting of said board was held on April 24, 1939, but no further action with reference to the property described in the order was taken; and that relators made no appearance and no appearance was made on behalf of the estate of Sarah L. G. Wilson, deceased.

Relators alleged that "such order made by respondents on April 17, 1939, if applicable to the estate of Sarah L. G. Wilson, deceased, was illegal, beyond the jurisdiction of said Board, unauthorized by law, and therefore void . . ." The reasons assigned were as follows: (1) The order named the wrong estate, being purported to be made against the estate of Mrs. N. B. Wilson, deceased, and not the estate of Sarah L. G. Wilson, deceased, whose late husband was Newton R. Wilson; (2) "On the first day of June, 1938, . . . the date fixed by law for the assessment of all property for taxes for the year 1939, the said Mrs. N. R. Wilson, or Sarah L. G. Wilson, was living and, therefore, said assessment, presuming that it was intended to be an assessment against the estate of which relators are executors, could only have been made against her;" (3) The order shows on its face that notice of the addition of such property to the assessor's books was ordered given to "Wm. S. Bedal and Geo. W. Lane, Attorneys for the Estate of Mrs. N. B. Wilson; . . . That, presuming that such assessment was intended to be an assessment against the estate of Sarah L. G. Wilson, deceased, relators, as executors under the will of Sarah L. G. Wilson, deceased, are and were at all times since November 23, 1938, the owners of said property and the only persons to whom such notice could have been given;" (4) "That no notice . . . was given to relators, . . ."

The writ, as issued, required respondents to certify and send up "a true, full and complete copy of the orders and records as such Board of Equalization in connection with the matters set forth in said application and all other acts and proceedings in said matters."

Respondents moved to quash the writ, assigning among others, the following reasons: (1) that it appeared on the face of the petition that Mrs. N. B. Wilson and Sarah L. G. Wilson were one and the same person; (2) that it appeared from the face of the petition that

all of the property assessed against the estate of Sarah L. G. Wilson was personal property and no notice of raise in valuation thereof was required by law; (3) that if the property assessed against the estate of Sarah L. G. Wilson was not correct such facts were outside of the record and certiorari could not reach them; and (4) that relators had full and adequate remedies at law for review and determination of the legality of the assessment. This motion was overruled and respondents filed their return.

The return consisted of a certified copy of the order of the board of equalization of April 17, 1939, set out supra, and a certified copy of an order of the County Court of St. Louis County entered October 23, 1939. This order stated that Sarah L. G. Wilson was a resident of St. Louis County on June 1, 1938; that she died November 19, 1938; that George W. Lane and Wm. S. Bedal had been appointed executors; that neither Sarah L. G. Wilson nor her executors had filed a return; that the assessor had made an arbitrary assessment for $200; that the board of equalization had raised the assessment on personal property to $1,303,013; that Sarah L. G. Wilson was the widow of Newton R. Wilson and was sometimes known as Mrs. Newton R. Wilson or Mrs. N. R. Wilson; and that the assessor erroneously made his assessment in the name of Mrs. N. B. Wilson. It then directed that the tax books and records of St. Louis County be corrected by changing the name of Mrs. N. B. Wilson therein to Sarah L. G. Wilson. This correction was made by the county court subsequent to the issuance of the writ and prior to the filing of the return.

Relators moved to strike from the return the records of the county court as not required by the writ, as improperly included in the return and as subsequent to the date of the writ. This motion was sustained.

In the hearing, over respondents' objections, relators offered in evidence a certified copy of the will of Sarah L. G. Wilson and a certified copy of letters testamentary as issued to them by the Probate Court of St. Louis County. The court, thereupon, ordered ''that the order made and entered by respondents, composing the Board of Equalization of St. Louis, County, Missouri, dated April 17, 1939, . . . be and hereby is quashed, voided and for naught held.''

Appellants, (respondents below), assigned error on the court's action (1) in overruling their motion to quash the writ; (2) in sustaining relators' motion to strike the county court's correction order from the return; and (3) in quashing the order of the Board of Equalization of April 17, 1939. It is further contended (a) that the order of the Board of Equalization only increased the valuation of personal property and no notice was necessary; (b) that the name used was not misleading or prejudicial; (c) that there is no evidence that relators were the executors of the estate taxed by the order of the

Board; and (d) that relators failed to pursue other remedies through the taxing agencies.

■ It is only necessary to consider the third assignment of error. The writ of certiorari, as applicable here, performs the same office as at common law and brings up the record of the inferior tribunal for review. The only questions which may be presented are questions of law arising on the face of the record. The common-law writ of certiorari, and its limitations, are fully discussed in the case of State ex rel. St. Louis Union Trust Co. v. Neaf, County Assessor, 346 Mo. 86, 139 S. W. (2d) 958, 961, 963 (1-11), and that discussion and citation of authorities need not be repeated here.

It will be noted that the writ brough up only the order of the board of equalization, as entered on April 17, 1939, and this was the only order that was quashed. The application for the writ conceded that no order of any kind was entered on April 24, 1939, with reference to this matter, and the record shows that relators did not seek to bring up the records of the assessor to determine whether said property and the valuation, as fixed by the said board of equalization, was in fact extended upon the assessor's books. The attack here is directed solely to the order of the board as entered April 17, 1939.

If the County Board of Equalization was without jurisdiction, or exceeded its jurisdiction, in entering the order of April 17, 1939, and that fact appears on the face of the record, the matter may be reached by certiorari and the record quashed.

In the case of State ex rel. Davis v. Walden, 332 Mo. 680, 60 S. W. (2d) 24, 26, this court said: "The County Board of Equalization is a tribunal of limited powers and jurisdiction. In performing its functions its acts are judicial in character . . . but it has only such powers and jurisdiction as are committed to it by statute. . . . If in exercising its statutory functions it exceeds its constituted power or jurisdiction, its acts in excess of its jurisdiction are void, and, if such fact appears on the face of its record, the record may be quashed on certiorari."

Relators (respondents here) contend that the order of the board of April 17, 1939, is void on its face (1) "because it purported to assess the owner of personal property in the wrong name;" (2) because it was made in the name of the "Estate of Mrs. N. B. Wilson, deceased," when Sarah L. G. Wilson was living on June 1, 1938, the assessment date; and (3) "because, since it failed to show that notice required by Sec. 9816, R. S. Mo. 1929, had been given, the board did not acquire jurisdiction to make the order." We shall consider these contentions in the order stated.

■ It is apparent that the first contention is not based upon any facts shown by the record. Relators merely assume that the order purports to assess the owner in the wrong name. It does not appear

from the record that the board of equalization, in entering its order against the estate of Mrs. N. B. Wilson, deceased, intended to direct the order against the estate of Sarah L. G. Wilson, deceased. The face of the record, therefore, does not show that the order named the wrong party.

In order to maintain certiorari relators must show that they have an interest in the proceeding sought to be reviewed and that they are aggrieved by the judgment of the inferior tribunal. The rule is stated in 11 C. J., p. 135, sec. 100 as follows: "Irrespective of whether the petitioner (relator) was a party in the lower court or tribunal, he is not entitled to the writ unless he has (1) an interest in the proceeding sought to be reviewed, and (2) has sustained an injury from the ruling therein. Furthermore, the interest must be a substantial one." [See also: State ex rel. Bennett v. Becker, 335 Mo. 1177, 76 S. W. (2d) 363, 367 (citing cases).] By reason of the difference in names no such interest appears from the face of the record.

There is, however, a rule accepted in some jurisdictions that after the allowance of the writ the status of the prosecutor (relator) as interested in the matter will be presumed in the absence of proof to the contrary. [11 C. J., p. 2091, sec. 374; State ex rel. Hill v. Moore, 84 Mo. App. 11, 20 (but see State ex rel. Bennett v. Becker, supra).] If we should assume relators' interest in the matter sought to be reviewed, and consider the matter on the theory upon which it is here presented by the parties, we could reach no different result. Appellants, in effect, concede that relators are interested in the matter and say that Mrs. N. B. Wilson and Sarah L. G. Wilson were one and the same person. Relators' petition for the writ, in effect, concedes that they recognized that the order naming the estate of Mrs. N. B. Wilson was intended to apply to the estate of Sarah L. G. Wilson, deceased. Their application for the writ is based upon that assumption, and, in fact, relators can have no interest in this matter unless the name "Estate of Mrs. N. B. Wilson, deceased," was intended to designate the "Estate of Sarah L. G. Wilson, deceased." The parties, therefore, seek to have this court determine whether the order of the board of equalization is void on its face because, when the estate of Sarah L. G. Wilson, deceased, was intended, the order named the estate as the estate of Mrs. N. B. Wilson, deceased. Relators concede that the name of the late husband of the late Sarah L. G. Wilson was Newton R. Wilson. Appellants contend that Sarah L. G. Wilson was known as Mrs. N. B. Wilson, and that the designation is sufficient so that the taxpayer or other interested parties would not be prejudiced or misled. Accordingly, the parties seek to submit an issue of fact which may not be done in a certiorari proceeding. "No issues of law or fact are to be made by the petition or writ, and return, to be tried by us, as in proceedings by mandamus or *quo*

940

*warranto.*" [State ex rel. Halpin v. Powers, 68 Mo. 320, 323; State ex rel. St. Louis Union Trust Co. v. Neaf, County Assessor, supra; State ex rel. Shartel v. Skinker, 324 Mo. 955, 25 S. W. (2d) 472, 477.]

Relators contend that our statutes provide that personal property shall be assessed in the name of the owner thereof. They refer to Sec. 9780, R. S. 1929, Mo. Stat. Ann., p. 7888, with reference to division and arrangement of the assessor's books, providing for "a list of the names of all persons liable to assessment, alphabetically arranged," and that "the assessor shall set opposite their names the personal property respectively owned by them." Relators also refer to Sec. 9782, R. S. 1929, Mo. Stat. Ann., p. 7891, stating what the personal assessment book shall contain, including a "list of the names of all persons liable to assessment, alphatbetically arranged, with proper priority of vowels." Relators contend, in effect, that the orders of the board of equalization, with reference to assessment of personal property, shall use the true, correct and lawful name of the owner of the property, or else the record will be void on its face.

Relators cite Vincent v. Means, 184 Mo. 327, 344, 345, 82 S. W. 96, where a judgment in quiet title against M. C. Vincent, in pursuance to notice by publication directed to M. C. Vincent, was held void against the record owner, Minos C. Vincent, there being no evidence to show Minos C. Vincent had received any deeds or conveyed land in the name of M. C. Vincent; also, Woodside v. Durham, 317 Mo. 15, 295 S. W. 772, where the recorded deed to land showed title in A. Willard Humphreys, and in a tax suit the only process was constructive service by order of publication directed to A. W. Humphreys, and a judgment against A. W. Humphreys, rendered by default, and a sale of land, thereunder, were held void. These cases have no application here.

We may concede that assessments of personal property, and the orders of the county board of equalization with reference thereto, should be made in the name of the owner. But what does the word "name" mean? We think the word "name," as used in the statutes with reference to the assessment of personal property should be taken in its plain, ordinary and usual sense. [Sec. 655, R. S. 1929, Mo. Stat. Ann., p. 4899.] A person's name is the designation ordinarily used, and by which he or she is known in the community. Names are used as a method of identification. Whether the identification is sufficient is ordinarily a question of fact. [45 C. J. 380, sec. 1; 45 C. J. 368, sec. 5.] A mere name, however, is not the only method of identification of the person assessed that is contained in the assessor's books. [See Sec. 9782, supra.]

We find nothing in the statutes requiring that assessments of personal property, or orders with reference thereto, shall be in the full, true, correct and lawful name of the owner. Section 9791, R. S. 1929, Mo. Stat. Ann., p. 7897, provides that no assessment of

property for taxes shall be considered illegal on account of any informality. [See State ex rel. Wyatt v. Cantley, 325 Mo. 67, 26 S. W. (2d) 976, 979.] Authorities in point, however, are very limited. Most cases from other jurisdictions involve real estate or were decided under special statutes. The matter is discussed in 61 C. J. 707, sec. 871, where it is said: "Also, it seems that a designation is generally sufficient if the name entered is one which the person commonly uses, and the one by which he is generally known."

In the case of People v. Whipple, 47 Cal. 591, a statute required the assessor to ascertain the names of every person owning property and to list and assess it to such person. The action was brought against a person known and called S. B. Whipple, but whose true name was Stephen B. Whipple, to recover a delinquent tax assessed against S. M. Whipple, a name by which the defendant was not known or called. In denying recovery, the court said: "It is not doubted that the statute would be satisfied in this respect by listing the property in the true name of the owner or in any name by which he was habitually known or accustomed to be designated."

In the case of Carrall v. State, 53 Neb. 431, 73 N. W. 939, 940, a statute requiring the "names of witnesses" to be endorsed on the information. The name "Mrs. Fred Steinburg" was endorsed. The State sought to use Alena Mary Steenburg, wife of Paul Fred Steenburg, as a witness. Defendant contended the name of the witness was not endorsed. There was evidence that she gave her name as "Mrs. Fred Steenburg" and that her husband was known as "Fred Steenburg." The court disposed of the issue of identity as a question of fact, and said: "It must be said that, in a strict sense or meaning, this was not the name of the witness. A married woman takes her husband's surname, and by a social custom, which so largely prevails that it may be called a general one, she is designated by the use of the Christian name, or names, if he has more than one, of the husband, or the initial letter or letters of such Christian name or names of the husband, together with the appellative abbreviation 'Mrs.' prefixed to the surname; and all married women (there may be, possibly, a few exceptions) are better known by such name than their own Christian name or names, used with their husband's surname, and their identification would be more perfect and complete by the use of the former method than the latter."

This court has discussed the use of names in indictments as follows: "Difficulties and confusion frequently arise growing out of the multiplicity of names given to individuals, and by which they are known; to obviate this, they should be named as they are generally called in society." [State v. Martin, 10 Mo. 391, 392; State v. Curran, 18 Mo. 320, 321.]

We think it is apparent, therefore, that if we considered the matter, as presented by the parties, we would still come back to the same ques-

tion of fact as to whether or not the order of the board did name the wrong party, that is, whether the name Mrs. N. B. Wilson was a sufficient designation of Sarah L. G. Wilson, and this issue of fact may not be determined in a certiorari proceeding. The order is not void on its face on account of error, if any, in name.

Was the record void on its face, because Sarah L. G. Wilson was living on June 1, 1938? [See State ex rel. Howard v. Timbrook, Executor, 240 Mo. 226, 240, 144 S. W. 843.] The record on its face does not show that Mrs. N. B. Wilson nor Sarah L. G. Wilson was alive on June 1, 1938. The order names the Estate of Mrs. N. B. Wilson. No one questions the fact that Mrs. Wilson was dead at the date of the order; that any notice required by statute could not have been given to her; and that she was not then the owner of the property. The petition of relators for the writ does allege that Sarah L. G. Wilson died November 19, 1938, but no evidence was offered to establish such fact, and if offered, the evidence could not have been received. [Hannibal, St. Joseph Ry. Co. v. State Board of Equalization, 64 Mo. 294, 308; State ex rel. St. Louis Union Trust Co. v. Neaf, supra (346 Mo. 86, 139 S. W. (2d) 958, 962).] We may not try the validity of this order of assessment upon its merits in this proceeding, even upon conceded or admitted facts, nor could the trial court so try the same.

Did Sec. 9816, R. S. 1929, Mo. Stat. Ann., p. 7914, require any special or extra notice (not otherwise required) prior to the entering of the order by the board on April 17, 1939? Appellants claim the order was entered under Sec. 9813, R. S. 1929, Mo. Stat. Ann., p. 7912, which provides: "The following rules shall be observed by county boards of equalization: First, they shall raise the valuation of all tracts or parcels of land and any personal property, such as in their opinion have been returned below their real value, according to the rule prescribed by this chapter for such valuation." The section then provides that if the valuation of real estate is raised the persons owning or controlling the same shall be notified. No extra or special notice is required either before or after an order has been entered for an increase in the assessment of personal property under Sec. 9813, supra. [State ex rel. Harrison County Bank v. Springer, supra, 134 Mo. 212, 224, 35 S. W. 589.]

Relators (respondents here) contend that the order was entered under Sec. 9816, R. S. 1929, Mo. Stat. Ann., p. 7914, which provides: "The county board of equalization, at its annual meeting in each year, in addition to the powers now conferred by law, shall have authority *to assess* and equalize the value of *any property* that may have been *omitted from the assessor's books* then under examination by said board, . . ." The section further provides: that "in case said board shall add any property, real or personal, to said assessor's books, it shall cause notice in writing to be served upon the owner of such

property, stating the kind and class of property and the value fixed thereon by said board, and naming the time and place, not less than five days thereafter, when and where such owner may appear before said board and show cause why said assessment should not be made.'' The section provides that this notice shall be signed by the clerk and shall be served by the sheriff of the county. It further provides that at the time fixed in said notice the board shall again meet and give an opportunity to said taxpayer to be heard in regard to said assessment, and may change or alter the same under certain conditions. It then provides that if the assessment is not changed at such hearing that ''said property and the valuation, as fixed by said board, shall be extended upon the assessor's books, as in case of other property.'' Relators say the notice required by this section was not given.

It is apparent from the face of the record that the board was attempting to act under Sec. 9816, supra, since specific personal property was added and its valuation fixed in lieu of the arbitrary assessment by the assessor. A date for hearing was designated and notice was ordered given. The order did not increase the valuation of particular personal property already assessed but added specific property. It was not a mere increase in valuation of personal property already upon the assessor's books.

Erroneously the board ordered the notice given by the *clerk* to the *attorneys* for the estate, but what notice was in fact given, by whom and to whom, is not before us, nor is any subsequent order of the board before us. In any case, the giving or failing to give the proper notice could not affect the board's jurisdiction, or statutory authority, to enter the first or preliminary order for the assessment of the omitted property. The notice, and opportunity for a hearing, were conditions precedent to the extension of the property and valuation upon the assessor's books, as provided in Sec. 9816, supra. The notice required by said section is directed to the date fixed for hearing and not to the date on which the omitted property was ordered assessed and its valuation fixed. Whether or not the proper notice was given to the date fixed for hearing does not appear of record, nor was it required to be of record. The record being silent, we must indulge the presumption that the preliminary steps necessary to valid action were duly taken. [State ex rel. Harrison County Bank v. Springer, supra; State ex rel. Ball v. State Board of Health, 325 Mo. 41, 26 S. W. (2d) 773, 775.] The erroneous order, as to notice, entered April 17, 1939, did not preclude the giving of proper and timely notice to the April 24th meeting, and no order was entered on the latter date. The order of the board of equalization of April 17, 1939, was not void on its face for failure to give any notice required by Sec. 9816, supra.

We are, therefore, of the opinion that the court erred in quashing the record since the errors complained of by relators do not appear

944

on the .face of the record. The board acted within its jurisdiction and did not exceed its jurisdiction in entering its order for the assessment of this property on April 17, 1939, and this is the part of the order of which relators complain as having been entered without the notice required by Sec. 9816.

The cause is reversed and remanded with directions to quash the writ of certiorari and dismiss relators' petition. *Hyde* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.