STATE of Missouri ex rel. Robert RAINEY M.D., Relator-Appellant,

v.

James E. CROWE, Chairman, Herman Willer, Arthur K. Atkinson and E. Kenneth Hagemann, all of the members of the Board of Election Commissioners for the City of St. Louis, Respondents.

No. 32015.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

James A. Stemmler, St. Louis, for relator-appellant.

Thomas J. Neenan, City Counselor, David S. Hemenway, Associate City Counselor, St. Louis, for respondents.

RUDDY, Presiding Judge.

This is a proceeding for mandamus instituted by relator in the Circuit Court of the City of St. Louis against respondents as members of and constituting the Board of

Election Commissioners for the City of St. Louis. The purpose of relator's mandamus action is to compel respondents to publish and to print on the sample and official ballots the name of relator, a duly filed candidate for the office of Coroner of the City of St. Louis, as "Robert Rainey M.D." Relator appeals from an adverse ruling in the trial court.

Relator, a duly licensed physician, claims he is entitled to mandamus to compel respondents to publish and print his name on the ballot in the November 1964 General Election as Robert Rainey M.D.

The facts are not in dispute. Relator filed his Declaration of Candidacy for the Office of Coroner of the City of St. Louis, Missouri. The primary election for said office was held August 4th, 1964, and the general election for said office is to be held November 3rd, 1964. We are informed that relator by virtue of the primary election result is now the nominee for said office of the party upon whose ticket he declared as a candidate and that his name as such candidate shall be placed on the official ballot in the election to·be held November 3rd, 1964.

Relator is a graduate, with a diploma and degree of Doctor of Medicine, of Washington University School of Medicine and is a duly licensed physician under the provisions of Chapter 334 of the Revised Statutes of Missouri 1959. On or about May 20, 1964, relator submitted to respondents an affidavit stating that the name by which he is known is Robert Rainey M.D. and accompanied it with a letter demanding that "Robert Rainey M.D." is the name that should be published under the provisions of § 120.390 RSMo 1959, V.A.M.S., and the name that should be on the official and sample ballots under the provisions of §§ 120.420, 120.441, 120.450 and 111.420 RSMo 1959, V.A.M.S. The respondents refused this demand and still continue to refuse the demand and take the position that relator's name should be published and printed as "Robert Rainey."

Relator testified in the trial below that he is known and has been known in recent years by the name of Robert Rainey M.D. and that the majority of documents, legal instruments and written communications which bore his name in recent years listed it as Robert Rainey M.D. He said this was always his practice in professional instances and usually in nonprofessional instances. He further testified that all documents or communications signed by him were signed under the name of Robert Rainey M.D. and this was done whether or not the document or other paper listed his name as such. This was true with the exception of certain stock dividend checks where the companies had refused to put the M.D. on the stock certificate, in which instances he signed both "Robert Rainey" and "Robert Rainey M.D." as an endorsement on the checks. In his testimony he said that people orally addressed him as Dr. Rainey or Dr. Robert Rainey or, among friends, as Bob Rainey, but that "Robert Rainey M.D." was the name by which he was formally known among the people in the community. Relator introduced into evidence the signature cards of bank accounts from several banks, credit cards from several oil companies, insurance policies and other documents and matter which listed his name as Robert Rainey M.D. The documents and matter which he had signed were signed Robert Rainey M.D. He also introduced into evidence Republican and Democratic sample ballots printed by respondents for the 1964 primary election in St. Louis. The purpose of this was to show that some of the candidates' nicknames had been printed in parentheses on said ballots and that the names of some of the women on the ballots sometimes included in parenthesis the designation "Mrs." followed by her husband's first name. He also testified that to the best of his knowledge most of the other physicians and surgeons in the community commonly used the initials "M.D." after their last names in professional or nonprofessional instances.

In 1959 relator was a candidate for membership on the St. Louis Board of Education. He said that after he filed his declaration of candidacy he demanded of the Board of Election Commissioners that they publish and print on the ballot his name as "Robert Rainey M.D." His demand was refused. However, he brought no suit at that time to require his name to be published and printed as "Robert Rainey M.D." There appears in the white pages of the 1964 Telephone Directory for the City of St. Louis the following names and addresses: "Rainey, Robt. D. 9718 Lanier; Rainey, Robt. E. 1527 Penrose; Rainey, Robt. MD (relator herein) City office 100 N Euclid Av, Residence 5165 Lindell." The yellow pages of said telephone directory list the relator and all other physicians and surgeons under a column headed "Physicians & Surgeons —M.D."

Relator further testified that he receives written communications addressed to him as "Dr. Robert Rainey", "Dr. Robert Rainey M.D.", and "Robert Rainey M.D.", the majority of which he said were addressed "Robert Rainey M.D." The newspaper published by the School Board of which he is a member and which is distributed to 100,000 public school children lists his name as "Dr. Robert Rainey." His name appears on the voter registration card in the office of the Board of Election Commissioners in the City of St. Louis as "Robert Rainey." He explains this by saying that he originally registered before he became a physician and surgeon and before he became known as "Robert Rainey M.D." adding, that after he moved to his present address at 5165 Lindell he sent a letter to the respondents about March 1964 informing them of a change of address and he signed the letter "Robert Rainey M.D." He said the respondents acknowledged this communication with a letter addressed to him as "Robert Rainey M.D." He admitted that at no time did he make a specific request to the respondents to have his name changed on the voter registration card to Robert Rainey M.D. He has never taken legal steps to change his name

to add the "M.D." and he further testified that his wife is known as Sharon Rainey. It is admitted by the relator that the said respondents in refusing the demand to have his name printed as requested acted in good faith.

Relator makes two principal contentions: (1) that respondents are required to publish and print on the general election ballot relator's name as "Robert Rainey M.D." because the election statutes require the publishing and printing of a candidate's "name" and "Robert Rainey M.D." is relator's name under the law of Missouri; (2) that respondents are required to publish and print on the election ballot relator's name as "Robert Rainey M.D." because such publication and printing is a "public listing or display" within the meaning of § 334.047 RSMo 1959, V.A.M.S. In this connection relator makes an alternative point, that " * * * if it could be said that, for some reason, the statute refers only to 'public listings and displays' having some connection of a medical nature, the relator still should prevail in this suit." In support of this relator points out that he is running for the office of Coroner of the City of St. Louis and that certain of the duties of said office are now of a distinctly medical nature and that under the generally accepted view that the Coroner should be a physician, the voters are entitled to know which of the candidates is a physician.

The initial step taken by relator in pursuit of his quest for the office of Coroner was to comply with § 120.340 RSMo 1959, V.A.M.S. which in part reads as follows: "The name of no candidate shall be printed upon any official ballot at any primary election unless such candidate has on or before the last Tuesday of April preceding such primary filed a written declaration, * * * stating his full name, residence, office for which he proposes as a candidate, the party upon whose ticket he is to be a candidate, that if nominated and elected to such office he will qualify, * * *." All other statutory requirements concerning the publishing and printing of the ballots refer to the "name"

**42**

of the candidate. Illustrative of this are §§ 111.410, 111.420, 120.380, 120.420, 120.450, 120.441, 120.540, 121.100 of the Revised Statutes of Missouri 1959, V.A.M.S.

The word "name" as used in the statutes providing for the publishing and printing of a candidate's name should be taken in its plain ordinary and usual sense as provided in § 1.090 RSMo 1959, V.A.M.S. and as said in the case of State ex rel. Lane v. Corneli, 347 Mo. 932, 149 S.W.2d 815, 1. c. 821.

The common law recognized only one Christian name or given name and one family surname. State v. Hands, Mo., 260 S.W.2d 14; Nolan v. Taylor, 131 Mo. 224, 32 S.W. 1144; Carlton v. Phelan, 100 Fla. 1164, 131 So. 117; Feldman v. Silva, 54 R.I. 202, 171 A. 922; 65 C.J.S. Names § 3, p. 2.

It has been held that the middle name or initial of an individual is unimportant and forms no part of the Christian name. State v. Hands, supra; Miller v. Medley, 236 Mo. 694, 139 S.W. 158. However, in modern times recognition is frequently given to one or more middle given names or initials. In the case of State ex rel. Lane v. Corneli, supra, the Supreme Court in defining the meaning of the word "name" said (149 S. W.2d at 1. c. 821) " * * * A person's name is the designation ordinarily used, and by which he or she is known in the community. Names are used as a method of identification. Whether the identification is sufficient is ordinarily a question of fact." This definition was given by the court in connection with the use of the word "name" as contained in the statutes relating to the assessment of personal property.

In State ex rel. Kansas City Public Service Company v. Cowan, 356 Mo. 674, 203 S.W.2d 407, 1. c. 408, the Supreme Court said: " * * * After all, a name is only what one calls himself for purposes of identification. * * * " A person's name, therefore, is the designation by which he is

commonly known and one which he knows himself and others call him. State v. Deppe, Mo., 286 S.W.2d 776, 781; Ohlmann v. Clarkson Sawmill Co., 222 Mo. 62, 120 S.W. 1155, 28 L.R.A.,N.S., 432; Nolan v. Taylor, supra.

Relator contends that he has always used the name Robert Rainey M.D. in all written communications emanating from him and that he has always signed his name with "M.D.", with certain exceptions heretofore noted, and that documents, legal instruments and communications received from others listed his name as "Robert Rainey M.D." He claims there is no reason, therefore, why the initials M.D., indicating he has received a degree of doctor of medicine, cannot be included as a part of his name if that is the name which he ordinarily uses and by which he is known.

The initials M.D. could not always have been used by the relator as he contends. The initials M.D. following his name could be used by relator only since he obtained the degree of doctor of medicine. Prior to the receipt of this degree he could not use these initials following his name. It would seem abundantly clear that the conferring of a degree on the relator and his use of the initials after his name indicating the degree would not have the effect of changing his name. The initials "M.D." are a mere characterization and description of his professional status in the community. We have been cited to only one case by the relator wherein the use of the designation "M.D." in connection with the printing of a name on a ballot in an election for Coroner was considered. The case cited is of no help to the relator. The case of State ex rel. Whetsel v. Murphy, 122 Ohio St. 620, 174 N.E. 252, cited by relator, involved candidates for election to the office of Coroner. The election officials had placed on the ballots the initials M.D. after the name of one of the candidates. It was claimed that those letters which characterized the contestee as a physician invalidated all votes cast for him and that the contestor,

Whetsel, having received the next highest number of votes at the primary election was entitled to be declared the nominee. The court said: "This court is of opinion that it is unlawful to place any characterization or description either before or after the name of a candidate upon a ballot, either at the primary or general election, where there is not such identity of the names of two or more candidates as to justify some descripton which will permit the voter to make an intelligent expression of his choice." The court found against contestor, however, on the ground that he failed to exercise due diligence and failed to present an effective objection, which he could have made prior to the primary election, in time to have prevented the descriptive matter being placed on the ballot.

█ In the instant case there is no evidence of another candidate for the office of Coroner with an identical or similar name as that of relator, which might justify some descriptive matter which would permit the voter to cast his ballot for the candidate of his choice. The use of the letters "M.D." is descriptive and the letters are not the equivalent of a name or a part of a name. 65 C.J.S. Names § 1, p. 2. They are a mere affix to the name of relator and indicate relator possesses a degree of doctor of medicine. In the case of Hunt v. Searcy, 167 Mo. 158, 67 S.W. 206, it was held that the commonly abbreviated prefixes and suffixes are not considered either as names in themselves, or as parts of names, ruling that the abbreviations "Jr." and "Sr." are no part of the name proper. Also, see Peter Piper Tailoring Co. v. Dobbin, 195 Mo.App. 435, 192 S.W. 1044. It has also been held that the prefix "Mrs." is not a name and is but a mere title. Carlton v. Phelan, supra; Feldman v. Silva, supra; 65 C.J.S. Names § 5, pp. 6 and 7. Other cases have held that the use of the designation "Dr." is a title and is no part of the name. Hamilton v. Shredded Wheat Sales, 54 R.I. 285, 172 A. 614; Gears v. State, 203 Ind. 3, 176 N.E. 553.

█ However, while § 120.340, RSMo 1959, V.A.M.S., calls for the "full name" and the other statutes refer to the "name" of the candidate and the "name" of a candidate would usually exclude the use of titles and other descriptive matter, nevertheless, whether the name used is sufficient to identify the person or candidate is ordinarily a question of fact. State ex rel. Lane v. Corneli, supra. In some cases the use of certain prefixes or suffixes has been permitted. In the case of Application of Carty, Sup., 115 N.Y.S.2d 193, the court directed that the candidate's name be printed on the primary ballot by adding "Jr." to the name Thomas F. Carty. In the case of Huff v. State Election Board, 168 Okl. 277, 32 P.2d 920, 93 A.L.R. 906, the court held that a married woman who was a candidate for office had the right to " * * * adopt 'Mrs.' as a part of her name."

█ We said before whether or not the name used is sufficient to identify the person or candidate is ordinarily a question of fact. This fact issue was first presented to the Board of Election Commissioners for the City of St. Louis. Under § 118.230, RSMo 1959, V.A.M.S., the Board of Election Commissioners has the power and the duty to make all necessary rules and regulations with reference to the registration of voters and the conduct of elections and shall have charge of and make provisions for all elections to be held in the City of St. Louis. In the case of State of Missouri ex rel. Hand v. Bilyeu, Mo.App., 346 S.W. 2d 221, it was said at l. c. 227, "We readily agree that mandamus will not lie to compel the doing of an act which, instead of being ministerial, is dependent upon the discretion or the judicial determination of the officer, and that election officials are, in general, charged with the duty of determining the qualifications of voters, interpreting ballots, and deciding various other matters in connection with the holding of an election. These usually involve the determination of facts or a combination of facts and law. Hence the functions are said to be quasi-

44

judicial, and not ministerial, and this discretion cannot be coerced by the courts. * * *" Also see State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67. However, if the discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise and such an abuse of discretion is controllable by mandamus. State ex rel. Hagerman v. Drabelle, Mo., 191 S.W. 691. The Board of Election Commissioners in the instant case had to make a determination of facts. In this connection we point out that even relator admits that the respondents in refusing the demand to have relator's name printed as requested, acted in good faith. We do not think the facts presented to the Board of Election Commissioners or to the trial court below were sufficient for this court to find that the discretionary power was exercised with manifest injustice as we shall point out below.

We pointed out heretofore that a prefix or a suffix is not ordinarily a part of a person's name and when relator made his demand of respondents to print his name with the suffix "M.D." he had the burden to reasonably satisfy the Board of Election Commissioners that the addition of this title and description to his name was necessary to permit the voters to make an intelligent choice of a candidate for Coroner.

As indicated we do not think relator sustained the burden that was his. The record is not clear as to what facts the Board of Election Commissioners had before it but we can reasonably assume that if the Board had before it the same facts that were before the trial court, the Board of Election Commissioners could have reasonably found that the initials "M. D." are a characterization and description of a person and not a part of relator's name; that said initials would merely signify that relator is a doctor of medicine which would have the effect of placing a qualification of the candidate on the ballot; that to permit relator to place a set of

initials after his name on the ballot under the circumstances of this case would require said Board of Election Commissioners in connection with the names of other candidates to place on the ballot descriptive matter requested by them, which could seriously encumber the ballot and cause confusion in the minds of the voters; that it had before it relator's name, not followed by the initials M. D., in that relator's voter registration card was under the name of Robert Rainey only; that there had been no request for a change of the relator's voter registration; that in 1959 relator was a candidate for membership on the Board of Education in the City of St. Louis; that his name appeared on the ballot as "Robert Rainey" without the initials "M. D."; that he was elected to said office and that there was no showing by relator that his name appearing as such caused confusion among the voters; that the evidence did not show that he is exclusively or even commonly known as "Robert Rainey, M. D."; that he always used the initials "M. D." in professional instances, but did not always use said initials in non-professional instances; that he was known among his friends as "Dr. Rainey" or "Dr. Robert Rainey" or "Bob Rainey"; that it is reasonable to believe that relator is not orally addressed as Robert Rainey, M. D.; that the said Board of Election Commissioners could have further found that there was no proof to show that "Robert Rainey, M. D." was the sole means of identifying Robert Rainey; that relator is identified sufficiently as Robert Rainey; that no evidence was adduced to show that any confusion in the minds of the voters would result from placing the name as Robert Rainey on the ballot; that no other candidate for the office of Coroner with the same or similar name was on the ballot.

Finally, it should be pointed out that relator admits that the respondents acted in good faith. It would seem that such an admission would preclude the charge of abuse of discretion. The above permissible findings are sufficient to support the decision

of the Board of Election Commissioners, to refuse the demand of relator to place the initials "M. D." after his name on the ballot. Consequently, we find that no manifest injustice was exercised in the use of the discretionary power possessed by said Board. Therefore, mandamus is not available to relator to effect a change in the decision of the Board of Election Commissioners or of the trial court below.

The next point urged by relator is that respondents are required to publish and print on the ballot relator's name as "Robert Rainey, M. D." because such publication and printing is a "public listing or display" within the meaning of § 334.047 RSMo 1959, V.A.M.S. The pertinent part of this section reads as follows:

"2. A licensee under this chapter shall, in any letter, business card, advertisement, prescription blank, sign, or *public listing or display of any nature whatsoever,* designate the degree to which he is entitled by reason of his diploma of graduation from a professional school approved and accredited as reputable by the American Medical Association or approved and accredited as reputable by the American Osteopathic Association. * * *" (Emphasis ours.)

▮▮▮▮ Relator contends that the phrase, "* * * public listing or display of any nature whatsoever * * *," encompasses the publication and printing on a ballot in connection with an election. Chapter 334, RSMo 1959, V.A.M.S., contains provisions for the licensing of physicians and surgeons and deals exclusively with their licensing as well as with the licensing of midwives. The section of Chapter 334 relied on by relator has no application to the Board of Election Commissioners and merely details a course of binding conduct on the licensee, namely, that one who has received a diploma of graduation from a professional school as outlined in said section must designate the degree to which he is entitled by reason of his diploma of graduation

when employing any of the categories mentioned under this section of the statutes and prescribes a course of conduct that is binding solely and only in matters that have a connection with the licensee's practice of his profession as a doctor. This limited application of the statute becomes more apparent when we examine the provisions of § 334.100, RSMo · 1959, V.A.M.S., which among other things holds that " * * * the following specifications shall be deemed unprofessional and dishonorable conduct within the meaning of this section: * * * (10) Using, or permitting the use of, his name under the designation of 'Doctor', 'Dr.', 'M. D.' or 'D. O.', or any similar designation with reference to the commercial exploitation of any goods, wares or merchandise; * * *." From this it becomes abundantly clear that the legislature did not intend that a physician or surgeon at all times was to place the initials "M. D." behind his name in every form of public listing. The provisions of Section 334.047 apply solely to the licensee and imposes a duty on the licensee when the "public listing or display of any nature whatsoever" is of a nature that has a connection with the licensee's practice of his profession as a doctor. Under no circumstances do the provisions of § 334.047 RSMo 1959, V.A.M.S., impose an obligation on the members of the Board of Election Commissioners of the City of St. Louis to designate on the ballot the degree to which licensee is entitled where licensee is running for public office.

However, relator says that even though the statute refers only to "public listing or display" having some connection of a medical nature, nevertheless, relator still is entitled to have the initials "M. D." follow his name on the ballot because certain of the duties of Coroner are now of a distinctly medical nature and the public is entitled to know that a duly licensed physician is running for the office of Coroner.

We may agree with relator that the public is entitled to know that a duly licensed physician is running for the office of Coro-

ner. But there is nothing in the law that permits either the candidate or the Board of Election Commissioners to use the ballot for campaign propaganda and statements of qualifications of candidates. There is no requirement in the statutes that a candidate for Coroner be a licensed physician. It may well be that this should be a requisite and qualification for the office of Coroner. Relator in his brief makes a forceful and eloquent plea why the Coroner should be a licensed physician. But since the law makes no such requirement we are compelled to turn a deaf ear to this plea. This is a matter that requires the attention of the proper legislative body. To print the initials "M. D." on a ballot would be a listing of a qualification of relator and for this there is no provision in the statutes of the State of Missouri. If the Board of Election Commissioners was required to place "M. D." after the name of the relator in order to list his qualifications as a duly licensed physician, then in the instances of other candidates it would be required to print initials and descriptions such as "Atty.," "Rev.," "Dr.," "M.D.," "LL.B.," "A.B.," "B.S.," "Ph.D.," "M.S.," "M.A.," "D.O.," "DD.S.," and many other descriptions too numerous to mention, which candidates may want to appear on the ballot to show that they possess qualifications superior to those of their opponents. If such initials were permitted to be placed on the ballot, other descriptive matter would be required to be placed on said ballot showing the past experience of the various candidates. Therefore, it can be readily seen that to permit the relator to have the initials "M. D." placed after his name on the ballot so that the public may know that a licensed physician is running for the office of Coroner would open the gates to a road that would lead to confusion in the minds of the voters and extreme delay in the conduct of elections. There are many mediums, well known to candidates and voters alike, for making known the qualifications of candidates seeking the preference of the electorate.

In view of what we have said and held, the trial court's order, finding and judgment denying the writ of mandamus is affirmed.

ANDERSON, J., and O. P. OWEN, Special Judge, concur.