774 A.2d 635

DR. RICHARD SOOY, JR., PLAINTIFF–RESPONDENT, v. GILDA T. GILL, CLERK OF SALEM COUNTY, HERBERT D. STILES, DEPUTY CLERK OF SALEM COUNTY, AND SALEM COUNTY CLERK'S OFFICE, DEFENDANTS–APPELLANTS.

DR. WARREN S. WALLACE, PLAINTIFF–RESPONDENT, v. JAMES HOGAN, CLERK OF GLOUCESTER COUNTY AND GLOUCESTER COUNTY CLERK'S OFFICE, DEFENDANTS–APPELLANTS, AND GLOUCESTER COUNTY BOARD OF ELECTIONS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted April 25, 2001—Decided May 21, 2001.

Before Judges KEEFE, EICHEN and WEISSBARD.

*Homan & Mulligan,* attorneys for appellants, Gilda T. Gill, Clerk of Salem County, Herbert D. Stiles, Deputy Clerk of Salem County, and Salem County Clerk's Office in A–005780–99T1 (*Mr. Michael Morris Mulligan,* on the brief).

*John G. DeSimone,* attorney for respondent Richard Sooy, Jr. (*Mr. DeSimone,* on the brief).

*John M. Carbone,* argued the cause for appellants James Hogan, Clerk of Gloucester County and Gloucester County Clerk's Office in A–001331–00T2 (*Carbone and Faasse,* attorneys; *Mr. Carbone,* on the brief).

*Harvey C. Johnson,* argued the cause for respondent Warren S. Wallace (*Mr. Johnson,* on the brief).

The opinion of the court was delivered by

KEEFE, P.J.A.D.

The issue presented in these two cases, which we have consolidated for the purpose of this opinion, is whether a candidate for public office is entitled to use a professional title preceding the candidate's name on the ballot. The issue is one of first impression in this State.[1] The Law Division judges in each case ruled that the County Clerks of Salem and Gloucester Counties abused their discretion in refusing to permit the candidates to use their professional titles. We reverse the judgments under review.

Richard Sooy, Jr., and Warren S. Wallace were candidates for elected office. Sooy sought the elected office of Board of Education member for Pennsville Township in Salem County, and Wallace sought the elected office of Freeholder in Gloucester County. Sooy is a podiatrist, while Wallace has a Ph.D. degree. Both use the professional title "Dr." preceding their names.

Sooy and Wallace requested the County Clerks of their respective counties to insert "Dr." preceding their names on the election ballots. In each case, the County Clerks denied the requests, taking the position that a professional title was not a part of a candidate's "name" in the context of *N.J.S.A.* 19:14-2. Sooy and Wallace filed separate complaints and orders to show cause in the Law Division. In each case, the trial court reversed the decisions of the County Clerks and compelled them to place "Dr." on the ballots preceding the candidates' names.

In the Sooy matter, the trial judge agreed with the Salem County Clerk that "Dr." is not the "plaintiff's name" and found that his name is "Richard Sooy, Jr." The judge acknowledged that the title of doctor resulted from Sooy's "training and his profes-

---

[1] The Attorney General declined our invitation to participate in the appeals.

sion." Nonetheless, the judge overruled the County Clerk's decision, giving the following reason:

> Inasmuch as I am made to believe that people have been able to have their names appear on … the ballot when they're candidates, under the names by which they're popularly known, and there's nothing before me to indicate that Dr. Sooy is not popularly known by the indication of Dr. Richard Sooy, then if a person is entitled to have a popularly known name entered on the ballot and it occurs, then a person who is known by his professional name is entitled as well. . . .
>
> And on that basis, I am going to issue the order provided that Dr. Sooy underwrites the cost of altering the ballot, accordingly. I note that neither of [the] counsel were able to provide me any citations, probably because there are none other than the Law Division case of 1971, which prohibited such use.

In the Wallace matter, the trial judge acknowledged the absence of statutory or case law authority in this State that either "allow[s] or disallow[s] the use of a title, such as doctor, on a ballot." Nonetheless, the judge overruled the Gloucester County Clerk. The essence of the judge's reason for doing so follows:

> News articles have been appended to the moving papers showing that he is commonly referred to in his political activities as Dr. Warren Wallace. His business card shows that he uses that title, Dr. Warren Wallace, and that is the name by which he is commonly known and it is, therefore, part of his persona and part of his identity.
>
> Any suggestion that there would be a misleading of the voters, I believe, is belied by that fact. Each of these cases must be evaluated on a case-by-case basis.
>
> . . . .
>
> When looking at the case-by-case determinations that have been made as examples and illustrations, we find that within this very county, this very candidate, Dr. Wallace, on three prior occasions has had his name printed on the ballot as Dr. Warren Wallace. The ballot, approved by the County Clerk in each instance, and put out to the voters for their consideration.
>
> We have when we look at individual cases the circumstances of an individual running for a State Assembly office and Attorney General John Farmer on August 6, 1999, certified the name of that individual running for the General Assembly as Herb Conaway, M.D., clearly indicating his status as a medical doctor. And that was certified and approved for a state office by the State Attorney General.
>
> We have the case in this vicinage, fairly recently, in which a school board nominee was permitted by court order in Salem County to use the title doctor. So to say that it is absolutely prohibited by law is not a valid position. Whether it should be a per se break line prohibition in all cases is not the law today. Whether it were made the law by some appropriate authority in the future, then that would be the guiding principle.
>
> . . . .

And apparently nicknames are commonly used. I know in my own common experience when I go to vote, I often see nicknames and Mr. McBride has pointed out an excellent example of why, in his own personal case, everyone knows him as Bud. If his name were to appear on some official document as Bernard, some people might say, who's that? And then you say, oh, it's Bud, they'd say, why didn't he say so, that's who I know him as, you mean Bud.

. . .

And, therefore, I conclude that in his case, for him, in this election, it is proper to allow him to use that on the ballot as a full and accurate and informative description of who he is, and who it is that's running for office.

■ These appeals followed. The elections have taken place. Nonetheless, we do not consider the appeals moot since the issue is of substantial public importance and is capable of repetition. *Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 330, 676 *A.*2d 1065 (1996).

It is clear from the Law Division's opinions in these matters that both judges entertained the complaints under the assumption that the County Clerks had discretion in deciding whether to use professional titles preceding the candidates' names. We hold, for the reasons to follow, that the County Clerks in the circumstances of these cases had no discretion to do other than they did.

■ In the context of the election laws, county clerks do not have discretion in all matters. "[W]here there is clear statutory direction of a specific procedure to be followed, the county clerk is governed thereby and has no discretionary authority." *Tomasin v. Quinn*, 150 *N.J.Super.* 593, 597, 376 *A.*2d 233 (Law Div.1977); *see also, Harrison v. Jones*, 44 *N.J.Super.* 456, 461, 130 *A.*2d 887 (App.Div.1957). The statute governing the content of the ballot in part pertinent to this appeal is as follows:

There shall be a single or blanket form of ballot, upon which shall be printed the *names* of all the candidates of every party or group of petitioners having candidates to be voted for at such election. The *name* of a candidate nominated at the primary who shall fail to accept his nomination, or file the oath of allegiance executed, in the manner herein provided shall not be printed on the ballot. The *name* of a candidate whose nomination has been vacated as hereinbefore provided shall not be printed on the ballot. The *name* of a candidate shall appear but once upon the ballot for the same office.

[*N.J.S.A.* 19:14–2 (emphasis added).]

■ Neither Sooy nor Wallace has provided authority for their contention that the title of a person is considered a part of that person's name. *Black's Law Dictionary* defines name:

[A] person's "name" consists of one or more Christian or given names and one surname or family name. It is the distinctive characterization in words by which one is known and distinguished from others, and description, or abbreviation, is not the equivalent of a "name."

[1023 (6th Ed.1991).]

The word "doctor" before one's name neither results from birth, nor is it given at birth. Rather, it is a title that is earned later in life by one who has achieved the highest academic degree in that person's chosen profession. *Id.* at 481, 130 *A*.2d 887. Further, to the extent that other sections of the election law are relevant, there is no provision in our voter registration law for the insertion of a title where the registrant is asked to print his or her "[n]ame." Rather, space on the registration form is provided only for a "[l]ast," "[f]irst," and "[m]iddle" name. *N.J.S.A.* 19:31–6.4. Moreover, our election law does not acknowledge that the attainment of a title provides a ground for changing one's voter registration identification. *N.J.S.A.* 19:31–13.

Wallace asserts that he has been permitted to use "Dr." preceding his name in three prior elections, and, thus, should be permitted to do so in the future. In addition, plaintiffs also cite other instances in which titles have been permitted. For example: Attorney General John Farmer's certification of a state-wide ballot that included the name and professional title of Herb Conaway, M.D., an Assembly candidate for the Seventh Legislative District for the 1999 general election; the name Janice Presser, Ph.D., was printed on the ballot in the 1998 general election for Cherry Hill Township; the name Dr. John A. Rocco was printed on the ballot by the Camden County Clerk in the 1995 general election; the name Dr. Armando A. Montiel was also printed on the ballot in the same election; and the name Dr. Charles P. Prato was printed on the ballot by the Camden County Clerk in the 1986 primary election. These anecdotal events, however, provide little help in deciding whether county clerks have discretion beyond the plain

language of the statute. They may be nothing more than examples of oversight rather than an exercise of discretion. Indeed, there may be far more instances in which county clerks have refused to allow candidates to use a title. Simply stated, the trial record is insufficient to establish that there is an accepted statewide approach to the issue. Therefore, the evidence produced in these cases, when considered as a whole, does not compel the conclusion that the New Jersey Legislature intended to permit titles to be used by candidates on ballots where the statute simply calls for a "name" to be used.

Much mischief can result from permitting discretion in this field without a candidate showing more than that he or she is known in the community by the appellation "doctor." While in this case, the evidence is clear that both candidates have legitimate doctorate degrees, that may not be evident in every case. Should a candidate be permitted to use the title "Dr." if it was obtained from a mail-in, unaccredited university? Is the public not being misled under such circumstances, irrespective of the fact that the candidate holds himself out in the community as a doctor? County clerks have the duty to protect the integrity of the ballot, yet there is no provision in the election laws establishing a procedure for county clerks to inquire into the bona fides of a candidate's request to include a title on the ballot. Discretion vested in the county clerk to decide on an *ad hoc* basis whether to allow the use of titles can lead to politicization of the ballot and frequent litigation. We fail to see its benefit in the circumstances of this case. The requests made by plaintiffs here were personal in nature. There was no issue of voter confusion raised by Sooy or Wallace stemming from the failure to use their title. That plaintiffs desire to be known to the electorate as doctors has no real relation to the goals of the election laws.

■■ While the election laws of each state differ, there are many cases in other states that deal with the issue of using

professional titles and nicknames on ballots.[2]  *See, e.g., Salinger v. Jordan*, 61 *Cal.*2d 824, 40 *Cal.Rptr.* 361, 395 *P.*2d 49 (Ca.1964); *Andrews v. Valdez*, 40 *Cal.App.*4th 492, 46 *Cal.Rptr.*2d 744 (1995); *Luke v. Superior Court*, 199 *Cal.App.*3d 1360, 245 *Cal.Rptr.* 594 (1988); *People v. Telford*, 103 *Ill.App.*2d 132, 242 *N.E.*2d 464 (1968); *None of the Above v. Hardy*, 377 *So.*2d 385 (La.Ct.App. 1979); *Evans v. City of Detroit Election Commission*, 381 *Mich.* 382, 162 *N.W.*2d 141 (1968); *Sullivan v. Hare*, 373 *Mich.* 627, 130 *N.W.*2d 392 (1964); *Petersen v. Holm*, 243 *Minn.* 38, 66 *N.W.*2d 15 (1954); *State v. Crowe*, 382 *S.W.*2d 38 (Mo.Ct.App.1964); *Lewis v. New York State Board of Elections*, 254 *A.D.*2d 568, 678 *N.Y.S.2d* 809 (1998); *Huff v. State Election Board*, 168 *Okla.* 277, 32 *P.*2d 920 (1934).  From these cases, we extract a general rule that titles are impermissible, unless there is specific statutory authority to the contrary,[3] or the names of two candidates vying for office are indistinguishable, thus, necessitating a way for the electorate to meaningfully choose between them.  *See, e.g., Salinger, supra*, 40 *Cal.Rptr.* 361, 395 *P.*2d at 50; *Andrews, supra*, 46 *Cal.Rptr.*2d at 745; *Evans, supra*, 162 *N.W.*2d at 143; *Petersen, supra*, 66 *N.W.*2d at 16–17; *Crowe, supra*, 382 *S.W.*2d at 43–44.  Thus, in the absence of a statute specifically permitting more than the candidate's name on the ballot, discretion to permit more than the candidate's name on the ballot is permitted only in circumstances where it is required to protect the electorate from confusion,

---

[2] The issue of using nicknames on the ballot is not squarely before us. However, the use of nicknames was referred to by both trial judges as if titles and nicknames present identical problems.  Nicknames, of course, are not titles, but they are not names either. Rather, nicknames are commonly defined as shortened first names, or familiar versions of given names.  *Blacks Law Dictionary, supra*, at 1044.  To the extent that nicknames have found their way onto the ballot in this state, a similar problem is presented because of the statute's plain language.  In order to promote uniformity and avoid litigation, we recommend that the Legislature consider the matter.

[3] *Andrews, supra*, 46 *Cal.Rptr.*2d at 745, and *Salinger, supra*, 40 *Cal.Rptr.* 361, 395 *P.*2d at 50, both California cases, are examples in which the legislature specifically provided for more than the name of the candidate to be shown on the ballot.

deceit, or deception. *See, e.g., Salinger, supra,* 40 *Cal.Rptr.* 361, 395 *P.*2d at 50; *None of the Above, supra,* 377 *So.*2d at 386–87; *Crowe, supra,* 382 *S.W.*2d at 43–44; *Lewis v. New York State Bd. of Elections,* 178 *Misc.*2d 395, 678 *N.Y.S.2d* 887 (Sup.Ct.1998), *aff'd, Lewis, supra,* 678 *N.Y.S.2d* at 810.

In *Crowe, supra,* for example, a candidate for the office of coroner filed a writ of mandamus against the Board of Elections Commissioners for the City of St. Louis seeking to compel the Board to publish the candidate's name with the title "M.D." 382 *S.W.*2d at 39–40. The candidate provided an exhaustive list of examples to the court of how he is known in the community as "Robert Rainey, M.D." *Id.* at 40. The candidate argued that "Robert Rainey, M.D." constituted his name under the law of Missouri. *Id.* at 41.

The court extensively scrutinized the legal definition of "name." *Ibid.* It found that the common law traditionally has "recognized only one Christian name or given name and one family surname." *Ibid.* In addition, the court noted the trend of courts finding "name" to be the "designation by which [a person] is commonly known and one which he knows himself and others call him." *Ibid.* While that analysis perhaps permits the use of a familiar or shortened first name, it leaves no option open for the use of a title. In that respect, the court was unequivocal:

> The initials M.D. could not always have been used by the [candidate] as he contends. The initials M.D. following his name could be used by [the candidate] only since he obtained the degree of doctor of medicine. Prior to the receipt of this degree he could not use these initials following his name. It would seem abundantly clear that the conferring of a degree on the [candidate] and his use of the initials after his name indicating the degree would not have the effect of changing his name. The initials M.D. are a mere characterization and description of his professional status in the community.
>
> [*Id.* at 42.]

The court also noted that other jurisdictions had held that "Dr." is a title and is not part of a name. *Ibid.; see also Hamilton v. Shredded Wheat Sales,* 54 *R.I.* 285, 172 *A.* 614 (1934); *Gears v. State,* 203 *Ind.* 3, 176 *N.E.* 553 (1931). The *Crowe* court reasoned:

If the [Board were] required to place 'M.D.' after the name of the [candidate] in order to list his qualifications as a duly licensed physician, then in the instances of other candidates it would be required to print initials and descriptions such as 'Atty.,' 'Rev.,' 'Dr.,' 'M.D.,' 'L.L.B.,' 'A.B.,' 'B.S.,' 'Ph.D.,' 'M.S.,' 'M.A.,' 'D.O.,' 'D.D.S.,' and many other descriptions too numerous to mention, which candidates may want to appear on the ballot to show that they possess qualifications superior to those of their opponents. If such initials were permitted to be placed on the ballot, other descriptive matter would be required to be placed on said ballot showing the past experience of the various candidates. Therefore, it can be readily seen that to permit the [candidate] to have the initials 'M.D.' placed after his name on the ballot so that the public may know that a licensed physician is running for the office of Coroner would open the gates to a road that would lead to confusion in the minds of the voters and extreme delay in the conduct of elections. There are many mediums, well known to candidates and voters alike, for making known the qualifications of candidates seeking the preference of the electorate.

[*Id.* at 46.]

While the *Crowe* court ultimately analyzed the question in the context of the exercise of discretion and affirmed the election board's decision, it made it quite clear that "M.D." and other professional titles or prefixes and suffixes would not be found valid on ballots, unless candidates possessed similar names. *Id.* at 43–44. In the latter circumstance, descriptive terms would be necessary to insure the integrity of the election process.

The same principle of law was followed in New York where a trial court, relying on *Crowe*, held: "[o]rdinarily and where there is not such a similarity of names as to confuse the electors, it is impermissible to place on an official ballot a characterization or designation before or after a candidates' name." *New York State Bd. of Elections, supra,* 678 *N.Y.S.2d* at 888 (quoting *Crowe, supra,* 382 *S.W.2d* at 38). While that court was specifically deciding whether or not Al Lewis, the television actor who played "grandpa" in the Munsters, could use that nickname on the ballot, it stated in *dicta* that titles and degrees are encompassed by the same reasoning. *Id.* 178 *Misc.*2d at 396–97, 678 N.Y.S.2d at 887–88 . The trial court decision was affirmed by the Appellate Division, which observed:

[C]haracterizations and designations before or after a candidate's name on an official ballot are generally impermissible. Although petitioner claims otherwise, we find that the use of the term "grandpa" is descriptive and, as noted by the Supreme Court, such description merely informs the voting public of petitioner's

"claim to fame" stemming from his character in a television series. Such descriptive terms are not permitted on official election ballots. While petitioner asserts that the use of the nickname is necessary in order to prevent confusion and permit the voters to make an intelligent choice of candidates for Governor, we disagree and find that petitioner's name by itself is sufficient for voters to identify him.

[*Lewis, supra,* 678 *N.Y.S.2d* at 810 (citations omitted).]

In *Telford, supra,* the Appellate Court of Illinois held that according to the Illinois' Election code, "Dr." could not be printed on the official ballot. 242 *N.E.*2d at 466–67. At the time, the statutory language called for the "name" of the candidate to be placed on the ballot, in contrast to an earlier statute that permitted the candidate's "name and description." In holding that the title "Dr." could not be used, the court reasoned:

While this is a case of first impression in Illinois, a similar problem has been considered by the courts of our sister states of Missouri, New York and Ohio. Without exception, these courts have held that it is not permissible to place on an official ballot characterization or designation before or after a candidates name, as[:]

The ultimate test of fairness is that the ballot furnish each elector a reasonable opportunity to express his choice, as where all the names are printed in the same style. . . . It would be neither fair nor practical to permit the insertion of such title or degrees with candidates' names, much less the myriad appellations and items of descriptive matter that might logically follow and which election fever and ingenuity would undoubtedly generate.

[*Id.* at 466 (quoting *Toigo v. County Bd. of Elections,* 51 *Misc.*2d 754, 273 *N.Y.S.2d* 781, 782–85 (Sup.Ct.1966)) (citations omitted).]

The court also noted that, because the statute was clear, the clerk could only act in a ministerial capacity, and was, therefore, not authorized to print on the ballot anything other than the candidate's name. *Ibid.*

Thus, we conclude that county clerks are, in general, required to place only the candidate's name on the ballot. County clerks have discretion to place titles on the ballot only in circumstances where a candidate is able to show that such is required to protect the electorate from confusion, deceit, or deception. Here, neither candidate made such a showing. Accordingly, the County Clerks of Salem and Gloucester Counties were without discretion to do other than place the candidates' names on the ballot without

titles. Since there was no discretion to exercise, their decisions were not subject to judicial review.

In circumstances where the county clerk's discretion is subject to review, "it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another." *Richardson v. Caputo*, 46 *N.J.* 3, 9, 214 *A.*2d 385 (1965). Thus, where the county clerk has exercised discretion and shows that the discretion was exercised to further a goal of the election laws, a court should not substitute its judgment for that of the county clerk. However, where the county clerk's discretion is not "rooted in reason, the bounds of delegated authority have been exceeded and it is the duty of the court to say so." *Ibid.* Given these principles of review, even if we were to assume that the County Clerks had the ability to exercise discretion in this case, there has been no showing that their judgment was arbitrary. Where voter confusion, deceit or deception was not implicated by the County Clerks' choices, there was no need for a court to interfere and replace the County Clerks' judgment with that of its own.

The judgments under review are reversed.