96 N.J. Super. 265 (1967)
232 A.2d 852
SUSY ROGERS, JAMES STREETER, RICHARD J. PAGE, CHARLES E. ROSEN, JR., AND NORMAN P. GOLD, PLAINTIFFS,
v.
THE STATE COMMITTEE OF THE REPUBLICAN PARTY OF THE STATE OF NEW JERSEY, A POLITICAL BODY ORGANIZED PURSUANT TO N.J.S.A. 19:5-4 AND THE STATE COMMITTEE OF THE DEMOCRATIC PARTY, A POLITICAL BODY ORGANIZED PURSUANT TO N.J.S.A. 19:5-4, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 23, 1967.
*266 Mr. Gary S. Stein for plaintiffs.
Mr. Sidney P. McCord, Jr., for Republican State Committee. (Messrs. McCord, Farrell, Eynon & Munyon, attorneys).
Mr. Harvey L. Stern for Democratic State Committee.
SCHNEIDER, J.C.C. (temporarily assigned).
This is a proceeding in lieu of prerogative writs challenging the constitutionality of N.J.S.A. 19:5-4, which statute sets up the state committees of the political parties in New Jersey.
Plaintiffs contend that the state committees of the Republican and Democratic Parties of New Jersey have certain *267 powers which affect the political and governmental processes of the State. Plaintiffs attack the representation on said committees as fixed by law. Each country has one male and one female member, elected at the primary election. Plaintiffs contend that the representation is improper under the United States Constitution because it fails to provide for a one man-one vote basis. They seek to have the committees dissolved unless the Legislature will amend to provide for the one man-one vote basis.
Plaintiffs are registered voters of the State of New Jersey and the County of Bergen. They claim the right to bring this action by reason of deprivation of equal protection of the laws in the selection of representatives on the state committees.
The Republican State Committee does not dispute plaintiffs right to bring this action. It alleges that it is an organized and duly constituted entity which abides by the laws enacted by our Legislature in conformity with the New Jersey and United States Constitutions. It contends it performs no legislative acts or any other act inconsistent with the Fourteenth Amendment to the United States Constitution and which in any way deprive plaintiffs or other citizens of their right to equal protection of the law. They claim protection under the First Amendment to the Federal Constitution and contend there is no direct or substantial injury to plaintiffs by reason of the functioning of this organization.
The Democratic State Committee states it will abide by the decision of the courts. It asks only that if the statute is declared unconstitutional, the State Committee as presently constituted be terminated at the end of the present four-year period.
The facts are conceded to be undisputed. The only evidence offered was a schedule showing the average percentage of Republican voters by county, voting in the primary elections in 1964, 1965 and 1966 as follows:

*268
 COUNTIES PERCENTAGE 1960 CENSUS
 Atlantic 7.4 160,880
 Bergen 13.8 780,255
 Burlington 4.1 224,499
 Camden 5.0 392,035
 Cape May 3.3 48,555
 Cumberland 2.8 106,850
 Essex 10.9 923,545
 Gloucester 3.3 134,840
 Hudson 2.6 610,734
 Hunterdon 1.3 54,107
 Mercer 1.8 266,392
 Middlesex 3.6 433,856
 Monmouth 7.0 334,401
 Morris 9.2 261,620
 Ocean 4.4 108,241
 Passaic 3.6 406,618
 Salem 0.7 58,711
 Somerset 3.7 143,913
 Sussex 1.4 49,255
 Union 9.0 504,255
 Warren 1.0 63,220

Under N.J.S.A. 19:5-4 there is elected in each county, at the primary for the general election in the year in which a Governor is to be elected, one male and one female member of the State Committee of each of the political parties. Members are elected for a term of four years and until their successors are chosen. It is, of course, conceded that the statute does not reflect any attempt at representation on a population basis.
The cases of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Jackman v. Bodine, 43 N.J. 453 (1964) set forth the one man,  one vote doctrine. In this case we are dealing with the constitutionality of N.J.S.A. 19:5-4. The members of the State Committee take office on the first Tuesday following their *269 election; the annual meeting takes place at that time and a chairman is elected for a four-year term. The Committee may adopt a constitution and by-laws. It selects the members of the National Committee of its political party.
Under R.S. 19:5-5 the State Committee may receive and disburse funds to maintain the organization, but expenditures are confined to hiring suitable rooms, stationery, clerks, expenses of notices of meetings, and giving publicity to the policies and candidates of the organization. Money received must be reported to the Secretary of State within 20 days after election, showing the persons who contributed, the amounts and how the money was spent. The State Committee members become members of the State Convention, N.J.S.A. 19:5-6. They join with others in nominating members of the County Board of Elections. N.J.S.A. 19:6-18. In case of a tie, the State Chairman fills vacancies, occurring after the primary election and before the general election, of candidates for the office of Governor or United States Senator. Under the recent amendment to the New Jersey State Constitution, the chairman of each major political party may name five people to redistrict and reapportion state legislative districts.
In Presidential years, the State Conventions nominate electors for President and Vice-President. R.S. 19:13-2. The State Committee selects candidates to fill vacancies in the House of Representatives occurring after 50 days prior to the general election, and only if the Governor determines there shall be no primary election. N.J.S.A. 19:27-10.1.
The decisions requiring change under the one man,  one vote doctrine have primarily concerned themselves with governmental agencies where the agency represents the people and is elected by the people. In this case plaintiffs seek to extend the doctrine to political parties by reason of the fact that the Legislature has given these parties certain functions which deal with the operation of government. In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court held justiciable the question of *270 whether the basis established by a state for election to its legislature denies equal protection of the law, in violation of the Fourteenth Amendment to the Federal Constitution. As pointed out by Chief Justice Weintraub in Jackson v. Bodine, supra, the Supreme Court majority opinion refrained from stating a test to measure compliance with the equal protection provision. (43 N.J., at p. 456). Baker v. Carr, concluded that both houses of a bicameral state legislature must be apportioned "substantially on a population basis."
The court has examined the decisions by the Supreme Court in the cases of Reynolds v. Sims, supra; WMCA Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Com. for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; and Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 1472, 12 L.Ed.2d 632. These cases refer only to the election of elected governmental bodies.
In Lynch v. Torquato, 343 F.2d 370 (3 Cir. 1965), registered Democrats challenged the method of selecting a party county chairman as denying equal protection of the law under the Fourteenth Amendment. The rules of the party provided for a man and a woman committee member from each election district. This Committee had the power, at extraordinary times, to select party nominees for election to public office. There was a claim of disparity in election districts, especially in the number of registered Democrats. The court held that a citizen's constitutional right to equality as an elector, as declared in relevant Supreme Court decisions, applies to the choice of those who shall be his elected representatives in the conduct of government, not in the internal management of a political party. The nature of the office of county chairman and its normal responsibilities made plaintiffs' claim much too broad for constitutional *271 validity. The Lynch decision was based on the narrow question before the Court.
Plaintiffs here seek to extend the one man  one vote doctrine to limits beyond any reported decision. The court agrees with defendants that the governmental functions given to the State Committee and its chairman are minimal in significance. They exercise no legislative functions. Their principal function is the administration of the party. A political party is an association of persons sponsoring ideas of government, or maintaining certain political principles or beliefs in the public policies of the government, and its purpose is to urge the adoption and execution of such principles in governmental affairs through officers of like beliefs. 25 Am. Jur 2d 800. It makes its own rules and regulations and determines its own policies, Ibid, at p. 804. The selection of candidates is by primary vote, and not by the Committee, although in certain instances vacancies may be filled by the state chairman.
Our courts are reluctant to interfere in intraparty controversies in the absence of a violation of a controlling statute or the infringement of a clear legal right. Deamer v. Jones, 42 N.J. 516, 250 (1964). The court there went on to say that the present provisions relating to party organizations reflects a legislative intent to provide the rudimentary framework by which county committees work. It saw no intention to create a pervasive regulation of intraparty operations and procedures as plaintiffs contend. The same may be said to apply to State Committees as well.
The power of the National Committee and the County Committees seems greater than that of the State Committee, which merely acts as liaison between the two. It neither makes nor enforces any laws, and the activities permitted it cannot be classified as truly governmental.
There is a disparity between the different counties as to the size of the primary vote, which does not relate to the percentage of voters, registered or cast. In some instances, in certain years, a small county may have more primary *272 voters than a large county. There would be no practical way to determine equal party representation. In one county there may be fewer registered Republicans than in another county of much smaller size. Cape May County may at times have more Republicans voting in a primary than Hudson County.
It is difficult to determine that plaintiffs have suffered any direct or substantial harm under the facts of this case.
In a very recent opinion, Sailors v. Board of Education, Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), there was an attack on the make-up of a county board of education as violating the one man  one vote doctrine. Mr. Justice Douglas stated that the Supreme Court decisions have in the main dealt with elections for United States Senators, Congressmen or state officers. He held that the functions of the county board of education were administrative and not legislative in the classical sense. As to nonlegislative officers, the state can appoint local officials, elect them, or combine the elective and appointive. The relief was denied.
The court also refused to extend the doctrine in the case of Dusch v. Davis, 385 U.S. 999, 87 S.Ct. 706, 17 L.Ed.2d 540 (1967). This involved an election in a consolidated county municipal plan for the election of officials where there was great discrepancy as to number of voters in the various boroughs. The argument was one between the rural and suburban areas. The court was of the opinion that the plan may be important in resolving the complex problem of the modern megalopolis in relation to the city, suburbia and the rural countryside. The court is reluctant to extend the doctrine beyond the limits set forth in this opinion.
Judgment will be rendered in favor of defendants. No costs.