GEORGE C. RICHARDSON, DAVID BLUMGART, KENRICK O. STEPHENSON, FREDERICK WARING, JOSEPH SCRIMMAGER, SAMUEL ARROYO, ABIGAIL MALMGREEN, MELVIN HIGGINS, THOMAS GONZALEZ, INGRID FRANK, ANITA WARREN, GEORGE FONTAINE, EDWIN STEVENS, DONALD DWORKIN, JOHNIE JOHNSON, STANLEY B. WINTERS, HILDA HIDALGO, AND HORACE P. SHARPER, PLAINTIFFS-APPELLANTS, v. NICHOLAS V. CAPUTO, INDIVIDUALLY, AND NICHOLAS V. CAPUTO, COUNTY CLERK OF ESSEX COUNTY, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued October 19, 1965—Decided October 19, 1965.

4

*Mr. Sanford Gallanter* argued the cause for appellants (*Messrs. Lawrence I. Lerner* and *William Rossmoore,* of counsel; *Messrs. Gallanter & Levy,* attorneys).

*Mr. Howard W. Hayes,* Assistant County Counsel, argued the cause for respondents.

The opinion of the court was delivered by

WEINTRAUB, C. J. The issue is whether in preparing the ballot for the general election of November 2, 1965, the County Clerk of Essex County erred in his allocation of positions to candidates of "The United-Political Freedom Party." The ballot as prepared by the County Clerk is reproduced in the addendum to this opinion. The trial court upheld the County Clerk. We certified the ensuing appeal before argument in the Appellate Division. Because of the time factor, we announced the result of our decision immediately following argument, adding that this opinion would follow.

Involved is a voting machine ballot upon which party nominations are to be placed in horizontal rows or lines. Across the top of the ballot are the offices to be filled. They total 19, the numbers being allocated to the offices in this order: the office of Governor, four offices of Senator, nine offices of Assemblyman, the office of County Clerk, the office of Register of Deeds and Mortgages, and three offices of Chosen Freeholder.

After lines A and B were allocated by draw to the Democratic and Republican parties, the County Clerk by further draw assigned the remaining candidates for Governor to the first positions on lines C through F. None of those candidates for Governor was tied with candidates for other offices.

The United-Political Freedom Party fielded candidates for all offices other than Governor, but prior to the statutory date for drawing for ballot position, all of those candidates withdrew except one of the four for Senator. Thereupon, there was no need for a further draw because no more than one candidate remained for any one ballot position. Accordingly the County Clerk assigned all of those candidates to line C. Thus the one United-Political Freedom candidate for Senator received position 2C; the lone candidate for the General Assembly received 6C; the candidates for Register and Freeholder received respectively 16C and 17C.

After the statutory date for drawing had passed, all of the vacancies in the United-Political Freedom slate were filled.

The County Clerk thereupon assigned the three substitute candidates for Senator to line ᛁC where they joined their fourth candidate already placed in that line on the day of the draw. The nine candidates for the General Assembly were placed in line D (as noted earlier, one General Assembly position in line C was already occupied by another candidate). The position on line C for County Clerk being open, the United-Political Freedom candidate for that office was placed in that position. The remaining candidates of that party were placed in line D. Thus the County ᛁClerk placed in line C all of the candidates who could be put there without breaking the bracketing for an office for which more than one were to be elected, *i. e.,* Senator, Assemblyman, and Freeholder.

We ordered the United-Political Freedom candidates moved from line C to line D, to the end that all of the United-Political Freedom candidates would appear on the same line. Our reasons follow.

The county clerk relied upon *Perry v. Giuliano,* 46 *N. J. Super.* 550 (*App. Div.* 1957), and *Axtell v. Caputo,* 85 *N. J. Super.* 80 (*App. Div.* 1964). He contends that *Perry* holds he has discretion in this matter and that his exercise of it is beyond judicial review. He adds that in any event *Axtell* prevented his doing anything but what he did. Specifically, he says that *Axtell* holds that no row or line may be skipped, and hence he was required to fill line C even though to do so would break the slate of a party.

In *Axtell* the County Clerk left an open line between the Democratic slate and the Republican slate. The Appellate Division held that *N. J. S. A.* 19:14–12 required that the slates of "political parties," as defined by statute, shall appear in successive rows or lines and hence a *whole* line could not be left between them. *Axtell* dealt with the precise situation we have just described, and did not hold that *every* position on *every* line must be filled before a position in the next line is assigned. Indeed, the County ᛁClerk here did not follow so literal a view of *Axtell* for as we have said he did not fill all of the positions in line C where to do so would destroy

the bracketing of candidates for an office to which more than one were to be elected, *i. e.,* Assemblyman and Freeholder. In that respect the County Clerk was correct, but for the reason that *Axtell* dealt only with the skipping of a whole line and did not lay down an inexorable rule that all positions on a line must be filled before a succeeding line may be used.

■■ In any event, although the County Clerk claims to have discretion in arranging the ballot, here he did not in fact exercise it but rather acted pursuant to a mistaken view of what *Axtell* compelled. His action could have been set aside on that ground alone and the matter remanded to him for reconsideration, but since we were satisfied that a proper exercise of discretion required that all of the complaining candidates be placed on the same line, and since we felt the lateness of the hour left no practical choice as to how that result should be reached, we directed that all of the complaining candidates be placed on line D. In so doing, we should not be understood to say a county clerk should not accord candidates so affiliated a line exclusively their own. On the contrary he should, if that course is feasible and if in the context of the whole ballot it would afford all the voters a clearer opportunity to find the candidates of their choice.

We referred above to the County Clerk's reliance upon *Perry v. Giuliano.* In that case the County Clerk placed the gubernatorial candidate of the Conservative Party in line E pursuant to a statutory draw for position, but placed that party's candidates for the General Assembly in line C. The Appellate Division said as to the Assembly candidates that "Mechanically, room exists on that line [E] for their inclusion, and the clerk might well, in his discretion, have placed them there" (at *p.* 555). However, the Appellate Division concluded it should not intervene.

The factual situation before us is somewhat different from the one presented in *Perry* but not sufficiently so to support a useful distinction. Hence, if we accepted *Perry's* approach to the judicial role, the County Clerk's action (assuming he had not labored under the mistaken belief, discussed above, that

*Axtell* commanded his course) would be beyond judicial disapproval. We, however, take a different view of the judicial obligation.

Discretion, of course, is never the plaything of office. Rather it imports responsibility, a duty to act with reason. True, it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another, *United Hunters Ass'n v. Adams,* 36 *N. J.* 288 (1962), but if it clearly appears the course taken is not rooted in reason, the bounds of the delegated authority have been exceeded and it is the duty of the court to say so.

The purpose of a ballot is to permit voters to record their will, and one must assume the Legislature intended a ballot so arranged that all voters may find their candidates with the least difficulty the total content of the ballot will permit. Here we can find no reason, and no one suggests a reason, to deny plaintiffs the benefit of their joint candidacy or to deny a voter who wants to advance the party or the principles of the candidates an easy opportunity to find all of them. Hence, if *Perry* correctly held the Legislature left the matter to the discretion of a county clerk, it clearly appears the action under review before us was not a proper exercise of that discretion.

Although the litigants did not so assert, we found ourselves more troubled by the question whether the statute was intended to deny a party, other than a "political party" as therein defined, the opportunity to have its slate on one line. As the Appellate Division noted in *Perry,* the statute dealing with *primary* elections explicitly authorizes candidates for different offices to request that they be placed on the same line of a voting machine ballot. *N. J. S. A.* 19:49–2. As to the general election, no such explicit expression appears except with respect to "political parties," and hence the question arises whether the legislative omission is an implicit denial of a like opportunity to parties which are not "political parties." We think the Legislature did not so intend.

"Political party" is defined to mean "a party which, at the election held for all of the members of the General Assembly next preceding the holding of any primary election * * * polled for members of the General Assembly at least ten per centum (10%) of the total vote cast in this State." *N. J. S. A.* 19:1–1. A party which attains that status is entitled to a primary election, *N. J. S. A.* 19:2–1, and such a political party is accorded a party column on the ballot for the general election unless the party shall have failed at its primary to poll the percentage we have just mentioned, in which event that party's nominees selected at the primary shall appear on the general election ballot in "the column or columns designated 'Nomination by Petition.'" *N. J. S. A.* 19:5–1. (As applied to a voting machine ballot, the word "column" equals the horizontal row or line described at the outset of the opinion.)

The provisions for the draw for position on the general election ballot appear in *N. J. S. A.* 19:14–12. That section first calls for a draw for position as among "political parties" and accords them the first rows or lines. The Democratic and Republican parties are the only "political parties," and as noted earlier, they received lines A and B respectively on the draw. The cited section then provides:

"The position which the names of candidates, and bracketed groups of names of candidates nominated by petitions for all offices, shall have upon the general election ballot, shall be determined by the county clerks in their respective counties."

It is this sentence which, standing alone, imports a delegation of discretion. The question is whether that understanding is dispelled by what follows, that is, whether the remainder of the section was intended to dictate all other details of the ballot.

What follows is a direction for a draw among the remaining candidates with respect to each office to be filled, and in this connection it is expressly stated that where more than one person is to be elected to an office and candidates for that

office have petitioned to be bracketed, the bracketed group shall be treated as a single name in the draw. But the section does not specify what shall be done if candidates nominated by petition for more than one office ask to be placed on the same line. The question is whether this omission bespeaks a rejection of that opportunity for affiliation or merely leaves the matter to the sound judgment of the county clerk to be exercised after the specified drawings have been held.

In approaching this issue, we must remember the importance under the statutory scheme of attaining the status of a "political party." It means an opportunity for a primary and also for one of the top lines on the general election ballot. We must assume the Legislature intended a fair opportunity for the voters to launch new parties if they are so minded. If it is true, as seems generally to be accepted, that candidates for several offices may obtain mutual support through affiliation on a single ticket, then it is meaningful for a party which must gather 10% of the vote for the General Assembly, to seek the aid to that end which a slate for several offices may provide. See *In re Gilfillan,* 124 *Misc.* 628, 207 *N. Y. S.* 628 (*Sup. Ct. Erie Cty.* 1924), affirmed 212 *App. Div.* 855, 207 *N. Y. S.* 842 (*4th Dept.* 1925), affirmed 240 *N. Y.* 579, 148 *N. E.* 712 (*Ct. App.* 1925). So, too, the individual candidate of a party not yet a "political party" would be disadvantaged in his contest with candidates of the "political parties" if his slate were scattered upon the ballot.

The statute surely contemplates that candidates other than those of a "political party" may be nominated by petition containing a "party" designation. *N. J. S. A.* 19 :13–4 provides for a "petition" of "candidates for the offices to be filled" and then says:

"The petition shall also state in not more than three words the designation of the party or principles which the candidates therein named represent; but such designation shall not contain the designation, name, derivative, or any part thereof as a noun or an adjective of any political party entitled to participate in the primary election.

"The petition shall also include the request that the names of the candidates and their designations of party or principles be printed upon the ballots to be used at the ensuing general elections."

*N. J. S. A.* 19 :13–9 requires the county clerk to certify to the Secretary of State the several candidates nominated for Senator and members of the General Assembly "together with the designation of the *party* nominating the candidates, whether by petition or at the primary election." *N. J. S. A.* 19 :13–22 provides in like terms for certification by the Secretary of State to the county clerks of "the names and residences of all other candidates, the offices for which they are respectively nominated, and the names of the *parties* by which or the political appellation under which they are respectively nominated."

Thus we have express recognition of an opportunity for "party" candidates, even though the "party" be not a "political party." Turning to the provisions dealing with the format of the paper ballot for the general election, we again find explicit recognition of that opportunity for *N. J. S. A.* 19 :14–2 says :

"There shall be a single or blanket form of ballot, upon which shall be printed the names of all the candidates of every *party or group of petitioners* having candidates to be voted for at such election. * * *" (Emphasis added)

It is true that *N. J. S. A.* 19 :14–6, 8 and 10 contemplate that whereas each "political party" will receive a separate "column" on the general election paper ballot, the other candidates shall appear under a column headed "Nomination by Petition," in which the offices are listed one under another in a stated order with the candidates for each office grouped beneath the title of that office. The sample of a ballot which appears in the underlying statute, *L.* 1930, *c.* 187, opposite *p.* 740, makes this quite clear. Thus a "party" other than a "political party" would not have a separate column. But the statute as thus written refers to the paper ballot rather than a voting machine ballot, and whereas with respect to the paper

ballot a voter wishing to vote for the candidates of a "party" would have no difficulty in finding all of them by simply running down the column, the voting machine ballot is not designed to permit such ease in voting. Rather one might have to follow a number of lines or columns to search out the candidates of his party, and this could be a considerable feat for a voter in the booth conscious of a queue on the other side of the curtain.

Hence, although *N. J. S. A.* 19:49–2 dealing with the voting machine ballot does say "the order of the precedence and arrangement of parties and of candidates shall be as now required by law" and thus refers to the existing statutes relating to the paper ballot, that reference must be understood to be qualified by the specifications of the format of a voting machine, see *N. J. S. A.* 19:48–1, to the end that although the provisions for drawing do apply, the result of the drawing shall be portrayed upon the voting machine ballot in a way which will achieve the basic aim of assisting the voter to register his choice. We note also that the voting machine statute, which is a supplement to the general election law, uses in the section just cited the word "party" rather than "political party," from which it might be argued the Legislature intended a full line or column for each "party" whether or not a "political party." That view of the statute was not urged upon us and we need not explore its possibilities. It is enough to say that since the statutes in their totality contemplate "party" nominations, they also contemplate a party's candidates shall appear in the same line if feasible. To achieve that end the county clerk is vested with appropriate discretion. Hence we agree with so much of *Perry v. Giuliano* as found the county clerk is vested with discretion, although, as we have said, we think that discretion was here misused.

To sum up, we conclude that with respect to the general election voting machine ballot here involved:

(1) A county clerk should first draw for position for the "political parties" as defined in the election law, assigning to them the top lines in accordance with the draw.

(2) There should then be a drawing among candidates for specific offices (those bracketed where more than one is to be elected to an office to be deemed to be a single candidate for that office for the purposes of the draw).

(3) Where candidates for more than one such office request in their petitions to be joined under the designation of a party or principle, such candidates may not participate in the draw referred to in (2) immediately above, but shall thereafter be so placed on the ballot as to appear on the same line if feasible to do so. It rests in the county clerk's reasoned judgment to determine whether such affiliated candidates should be placed alone in a separate line or on a line in which a candidate for another office appears. He should assign a separate line to a party slate if that course is feasible and if in the context of the whole ballot it would afford all the voters a clearer opportunity to find the candidates of their choice. If the county clerk decides to use a line already partially occupied, he should use the first line from the top upon which the affiliated candidates can be placed unless good reason appears for not doing so. If there are more than one such group of candidates and it would be appropriate to draw among them for the available spaces, the county clerk may resort to a draw.

We of course cannot anticipate and suggest guidelines for all situations. Nor should it be necessary. There is guidance in the polestar — a ballot which will permit all the voters to express their will fully and as easily as circumstances will reasonably permit.

Accordingly the judgment was reversed with the directions stated earlier in this opinion.

HALL, J., concurring in result.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For affirmance*—None.

ADDENDUM