Plaintiff's remaining points on appeal are either moot or without merit. *See R.* 2:11–3(e)(1)(E).

We reverse and remand for a new trial.

735 A.2d 1189

NEW JERSEY CONSERVATIVE PARTY, INC., A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; LEONARD P. MARSHALL, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED; HOVEY BEST, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED; AND IVAN SMOLLEN, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. JOHN J. FARMER, JR., IN HIS CAPACITY AS THE ATTORNEY

GENERAL OF THE STATE OF NEW JERSEY; NEW JERSEY STATE REPUBLICAN COMMITTEE, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; NEW JERSEY DEMOCRATIC STATE COMMITTEE, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; MICHAEL J. GARVIN, IN HIS CAPACITY AS THE ATLANTIC COUNTY CLERK; KATHLEEN A. DONOVAN, IN HER CAPACITY AS THE BERGEN COUNTY CLERK; MICHAEL CONDA, IN HIS CAPACITY AS THE BURLINGTON COUNTY CLERK; JAMES BEACH, IN HIS CAPACITY AS THE CAMDEN COUNTY CLERK; ANGELA F. PULVINO, IN HER CAPACITY AS THE CAPE MAY COUNTY CLERK; GLORIA NOTO, IN HER CAPACITY AS THE CUMBERLAND COUNTY CLERK; PATRICK J. MCNALLY, IN HIS CAPACITY AS THE ESSEX COUNTY CLERK; JANET E. HAYNES, IN HER CAPACITY AS THE HUDSON COUNTY CLERK; ELAINE FLYNN, IN HER CAPACITY AS THE MIDDLESEX COUNTY CLERK; M. CLAIRE FRENCH, IN HER CAPACITY AS THE MONMOUTH COUNTY CLERK; ALFONSO W. SCERBO, IN HIS CAPACITY AS THE MORRIS COUNTY CLERK; RONNI NOCHIMSON, IN HER CAPACITY AS THE PASSAIC COUNTY CLERK; R. PETER WIDIN, HEREINAFTER, SOMERSET COUNTY CLERK; ERMA GORMLEY, IN HER CAPACITY AS THE SUSSEX COUNTY CLERK; JOANNE RAJOPPI, IN HER CAPACITY AS THE UNION COUNTY CLERK; TERRANCE D. LEE, IN HIS CAPACITY AS THE WARREN COUNTY CLERK, DEFENDANTS–APPELLANTS, AND JAMES HOGAN, IN HIS CAPACITY AS THE GLOUCESTER COUNTY CLERK; DOROTHY K. TIPPOK, IN HER CAPACITY AS THE HUNTERDON COUNTY CLERK; CATHERINE DICONSTANZO, IN HER CAPACITY AS THE MERCER COUNTY CLERK; M. DEAN HAINES, IN HIS CAPACITY AS THE .OCEAN COUNTY CLERK; JOHN W. CAWMAN, IN HIS CAPACITY AS THE SALEM COUNTY CLERK, DEFENDANTS,BERGEN COUNTY DEMOCRATIC ORGANIZATION AND ESSEX COUNTY DEMOCRATIC COMMITTEE, INC., DEFENDANTS/INTERVENORS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Telephonically argued August 27, 1999—Decided September 3, 1999.

Before Judges KLEINER and BRAITHWAITE.

*Donna Kelly,* Senior Deputy Attorney General, argued the cause for appellant *John J. Farmer, Jr.,* Attorney General of the State of New Jersey (*Ms. Kelly,* on the brief).

*John E. Harrington,* Esq., argued the cause for appellant New Jersey State Democratic Committee (*Mr. Harrington* submitted a statement in lieu of a brief and joins in the brief of the Attorney General.)

*Peter G. Sheridan* argued the cause for appellant New Jersey Republican State Committee (*Graham, Curtin & Sheridan,* attorneys; *Mr. Sheridan,* of counsel and on the brief; *Dorothy A. Harbeck, Christopher J. Keale* and *Lynn B. Kegelman,* on the brief).

*John M. Carbone* argued the cause for appellants Bergen, Cape May and Somerset County Clerks (*Carbone & Faase,* attorneys; *Mr. Carbone,* on the brief). Atlantic County Department of Law, attorney for appellant Atlantic County Clerk (*William P. Busch, Jr.,* Assistant County Council, joins in the brief of the Attorney General).

Atlantic County Department of Law, attorney for appellant Atlantic County Clerk (*William P. Busch,* Jr., Assistant County Council, joins in the brief of the Attorney General).

*Evan H.C. Crook,* Burlington County Solicitor, attorney for appellant Burlington County Clerk (*Jean Hartman Culp,* Senior Assistant Solicitor, on the brief).

*Zane & Lozuke*, attorneys for appellant Camden County Clerk (*Donna Sigel Platt* joins in the brief of the Attorney General).

*Richard J. Geiger*, Cumberland County Counsel, attorney for appellant Cumberland County Clerk, joins in the brief of the Attorney General.

*County of Essex, Juan C. Fernandez, Essex County Counsel*, attorney for appellant Essex County Clerk (*Thomas M. Bachman*, Assistant County Counsel, joins in the brief of the Attorney General).

*Gaetano M. DeSapio*, Hunterdon County Counsel, attorney for appellant Hunterdon County Clerk, joins in the brief of the Attorney General.

*Francis DeLeonardis*, Hudson County Counsel, attorney for appellant Hudson County Clerk, joins in the brief of the Attorney General.

*Bruce J. Kaplan*, Middlesex County Counsel, attorney for appellant Middlesex County Clerk, joins in the brief of the Attorney General.

*Cassidy, Messina & Laffey*, attorneys for appellant Monmouth County Clerk (*Gil D. Messina*, Assistant County Counsel, joins in the brief of the Attorney General).

*Ronald Kevitz*, Morris County Counsel, attorney for appellant Morris County Clerk, joins in the brief of the Attorney General.

*William J. Pascrell III*, Passaic County Counsel, attorney for appellant Passaic County Clerk, joins in the brief of the Attorney General.

*McConnel & Norton*, attorneys for appellant Sussex County Clerk, join in the brief of the Attorney General.

*Carol I. Cohen*, Union County Counsel, attorney for appellant Union County Clerk, joins in the brief of the Attorney General.

*David A. Wallace*, Warren County Counsel, attorney for appellant Warren County Clerk, joins in the brief of the Attorney General.

*Genova, Burns & Verona,* attorneys for defendant/intervenor-appellant Essex County Democratic Committee, Inc. (*Angelo J. Genova,* on the brief).

*Dennis J. Oury* argued the cause for defendant/intervenor-appellant Bergen County Democratic Organization (*Oury & Mizdol,* attorneys; *Mr. Oury* joins in the brief of the Attorney General).

*Eugene M. LaVergne,* argued the cause for plaintiff-respondents.

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

On August 5, 1999, plaintiffs New Jersey Conservative Party and three of its individual members who are candidates for elective office in the 1999 general election,[1] filed a certified complaint for declaratory and injunctive relief seeking to enjoin defendants, county clerks, from drawing separate political party columns for the Democratic and Republican parties on the official ballot for the 1999 general election. *See N.J.S.A.* 19:5–1. Defendant John J. Farmer, Jr., the Attorney General, was sued in his official capacity because the functions, powers, and duties of the Secretary of State under the election laws were transferred by the Governor to the Department of Law and Public Safety under the Executive Reorganization Act, *N.J.S.A.* 52:14C–1 to –11. Plaintiffs sought a declaration that neither the Republican nor Democratic party qualified as a political party for purposes of "a party column on the official ballot" at the 1999 general election. *N.J.S.A.* 19:5–1.

---

[1] Plaintiff Leonard P. Marshall, candidate for the General Assembly in the 11th Legislative District.

Plaintiff Ivan Smolden, candidate for the Office of Monmouth County Freeholder.

Plaintiff Hosey Best, candidate for the General Assembly in the 7th Legislative District.

Plaintiffs' complaint was accompanied by an order to show cause that sought to restrain the county clerks from performing the statutorily required drawing "to determine which columns the political parties" would occupy on the 1999 general election ballot. *N.J.S.A.* 19:14–12. The Chancery Division judge denied plaintiffs' requests for restraints on August 9, 1999. The judge, however, scheduled a subsequent hearing on the merits of plaintiffs' claim for declaratory relief for August 23, 1999. Defendants were granted an opportunity to submit additional written opposition and to move for affirmative relief such as dismissal of plaintiffs' complaint.

The Attorney General moved to transfer venue and, in the alternative, moved for summary judgment dismissing plaintiffs' complaint. The motion for change of venue was adjourned until October 10, 1999 and the motion for summary judgment was denied. The judge, however, granted partial summary judgment to plaintiffs declaring:

(1) that the votes cast at the Republican 1999 primary for candidates for the General Assembly did not exceed 10% of the total votes cast for candidates for the General Assembly in the 1997 general election;

(2) that the votes cast at the Democratic 1999 primary for candidates for the General Assembly did not exceed 10% of the total votes cast for candidates for the General Assembly in the 1997 general election;

(3) that, as a result of paragraphs (1) and (2) above, and in accordance with *N.J.S.A.* 19:5–1, neither the Democratic nor Republican Parties are entitled to have a party column but shall be referred to in the ballots for the 1999 general election in accordance with the following provision of *N.J.S.A.* 19:5–1:

In such cases the names of the candidates nominated at the primary election shall be printed in the column or columns designated "Nomination by Petition" on the official ballot under the respective titles of office for which the nominations have been made, followed by the designation of the political party of which the candidates are members.

Further, the judge declared that any action taken by the county clerks inconsistent with his order was void and enjoined the clerks from taking any further action with respect to preparing the 1999 general elections ballot that was inconsistent with his order.

The defendants moved for leave to appeal, which we granted. We summarily reversed the partial declaratory judgment and reserved the right to prepare a written opinion.

The parties and the Chancery Judge agreed that the resolution of the issue raised by plaintiffs rested on the interpretation of *N.J.S.A.* 19:5–1, which provides as follows:

> A political party may nominate candidates for public office at primary elections provided for in this Title, elect committees for the party within the State, county or municipality, as the case may be, and in every other respect may exercise the rights and shall be subject to the restrictions herein provided for political parties; except that no political party which fails to poll *at any primary election for a general election* at least ten per centum (10%) of the votes cast in the State for members of the General Assembly at the next preceding general election, held for the election of all of the members of the General Assembly, shall be entitled to have a party column on the official ballot at the general election for which the primary election has been held. In such case the names of the candidates so nominated at the primary election shall be printed in the column or columns designated "Nomination by Petition" on the official ballot under the respective titles of office for which the nominations have been made, followed by the designation of the political party of which the candidates are members.
>
> [Emphasis added.]

The parties agree that the 1997 general election for the General Assembly is the relevant election for purposes of arriving at the "ten per centum (10%) of the votes cast in the State," which is the target that must be met in the 1999 primary election for purposes of a party column on the official ballot for the 1999 general election. *Ibid.* The total votes cast in the State in the 1997 General Assembly election was 4,283,042. Ten percent of that total is 428,304.

The question raised by plaintiffs is what primary elections are to be considered in determining whether a political party achieved the ten percent target. Plaintiffs urge that the only primary elections to be considered are those for the General Assembly. Because both the Republican and Democratic parties polled less than 428,304 votes in the 1999 General Assembly primary elections, plaintiffs claim that these parties are not entitled to have a party column on the 1999 official ballot for the general election. Plaintiffs assert that because the text of *N.J.S.A.* 19:5–1 mentions

only the General Assembly, the General Assembly primary elections are the only elections to be considered in determining whether the ten percent target had been met. As noted, the target for both the Democratic and Republican parties is 428,304 votes. The total votes cast for the Democratic and Republican General Assembly candidates in the 1999 primary were 257,606 and 203,119, respectively. Plaintiffs claim that both parties have not met the target and are, therefore, not entitled to a party column on the official ballot.

Defendants assert that all primary elections, including those for local and county offices, are to be considered in determining whether a political party has met the ten percent target. The total votes cast for the Democratic and Republican candidates in all the 1999 primary elections was 1,247,967 and 717,829, respectively. Based on these totals, defendants contend that the Democratic and Republican parties have met the ten percent target and are, therefore, entitled to a party column on the official ballot.

The trial judge agreed with plaintiffs and concluded that only primary elections for the General Assembly are to be considered. He stated: "[T]he court finds that the threshold of *N.J.S.A.* 19:5–1 is met by the number of primary votes cast for candidates for the General Assembly only."

We begin our analysis by noting that " 'the meaning of a statute must . . . be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms.' " *Sheeran v. Nationwide Mutual Ins. Co., Inc.,* 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)). The pivotal language here is "at any primary election for a general election." *N.J.S.A.* 19:5–1. We concluded that this language is plain and requires that all primary elections for the general election must be considered and not just those for the General Assembly. Support for this construction is found in the definition of "any election" which "includes *all* primary, general, municipal, school and special elections, as de-

fined herein." *N.J.S.A.* 19:1–1 (emphasis added). The meaning of "any election" in the context of our election statute includes "all" elections. *Ibid.*

■ A "primary election" is "the procedure whereby the members of a political party in the State or any political subdivision thereof nominate candidates to be voted for at general elections...." *Ibid.* A primary election, therefore, includes elections for national, State, and local elective offices. "A political party is an association of persons sponsoring ideas of government, or maintaining certain political principles or beliefs in the public policies of the government, and its purpose is to urge the adoption and execution of such principles in governmental affairs through officers of like beliefs." *Rogers v. State Comm. of the Republican Party,* 96 *N.J.Super.* 265, 271, 232 *A.*2d 852 (Law Div.1967). Given these definitions, it is difficult to perceive that the Legislature intended, by the language of *N.J.S.A.* 19:5–1, that only the primary elections for the General Assembly be considered in determining whether a political party met its ten percent target to ensure a party column on the official ballot at the general election.

If plaintiffs' interpretation of the statute is correct, then in the years in which there are no primary elections for the General Assembly, such as the even-numbered calendar years, there would be no method to determine whether a given political party was entitled to a party column on the official ballot for the general election. Plaintiffs argue that *N.J.S.A.* 19:5–1 only applies every other year, when there are primary elections for the General Assembly. They assert, therefore, that if a political party meets its target during the primary elections for the General Assembly, it has a party column for the next succeeding two-year period.

■ We find no authority in the statute for that construction. There is a primary election for the general election every year, *N.J.S.A.* 19:23–40, and a general election every year, *N.J.S.A.* 19:1–1 and 2–3. With such a requirement, we conclude that a political party must qualify for a party column on the official ballot in the general election by satisfying the provision of *N.J.S.A.*

19:5–1 annually. This necessarily means that in those years where there are no primary elections for the General Assembly, other elections are considered in determining political party status for a party column.

> "Political party" is defined to mean "a party which, at the election held for all of the members of the General Assembly next preceding the holding of any primary election . . . polled for members of the General Assembly at least ten per centum (10%) of the total vote cast in the State." *N.J.S.A.* 19:1–1. A party which attains that status is entitled to a primary election, *N.J.S.A.* 19:2–1, and such a political party is accorded a party column on the ballot for the general election unless the party shall have failed at its primary to poll the percentage we have just mentioned, in which event that party's nominees selected at the primary shall appear on the general election ballot in "the column or columns designated 'Nomination by Petition.'" *N.J.S.A.* 19:5–1.
>
> [*Richardson v. Caputo*, 46 *N.J.* 3, 10, [214 *A.*2d 385] (1965).]

The drawing of positions for the political parties for the official ballot of the general election is performed by the county clerks pursuant to *N.J.S.A.* 19:14–12. This function is performed annually by the clerks on the "eighty-fifth day prior to the day of the general election." *Ibid.* This, in our view, is further support for the position that qualifying for a party column is an annual event based upon the political parties' performance in the annual primary election. Because in the even-numbered years such as 1998 when there are generally no primary elections for the General Assembly, the other primary elections must be considered to determine party status for a party column on the official ballot.

A voter affiliated with a political party could vote in a primary election and decline to vote for the candidate or candidates for the General Assembly for many reasons. If plaintiffs' position is correct, then the votes cast by such an individual would not be counted in determining political party status for party column purposes. The language of the statute does not support such a view, nor can we perceive that the Legislature intended such a result.

■ Moreover, the record is clear that, for the past fifty years, defendant Attorney General, and before him, the Secretary of State, have interpreted *N.J.S.A.* 19:5–1 to mean that all primary

elections are considered in determining whether a political party has met its target for party column purposes on the official ballot. As our Supreme Court has observed that it " 'places great weight on the interpretation of legislation by the administrative agency to whom enforcement is entrusted.' " *Medical Soc'y of N.J. v. Department of Law. & Pub. Safety,* 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990) (quoting *Peper v. Princeton Univ. Board of Trustees,* 77 *N.J.* 55, 69–70, 389 *A.*2d 465 (1978)). This longstanding and consistent interpretation of the statute further satisfies us that our interpretation conforms with the legislative intent. "[A]n agency's construction of a statute over a period of years without legislative interference will, under appropriate circumstances, be granted great weight as evidence of its conformity with the legislative intent." *Malone v. Fender,* 80 *N.J.* 129, 137, 402 *A.*2d 240 (1979). Here, appropriate circumstances exist to conclude that the defendants' interpretation of *N.J.S.A.* 19:5–1 is consistent with the intent of the Legislature.

Finally, some defendants raised procedural defenses such as lack of jurisdiction, laches, waiver, estoppel and a failure of plaintiffs to timely proceed pursuant to *Rule* 4:69–6. Because of the importance of the issue, and the trial judge's decision to address the merits, we decided to also address the case on the merits. We, therefore, did not consider the procedural defenses raised by some defendants.

Reversed.