NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2805-16T4

STEVEN CALTABIANO,

    Plaintiff-Appellant,

v.

GILDA T. GILL,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 24, 2017**
>
> **APPELLATE DIVISION**

Submitted March 23, 2017 — Decided March 24, 2017

Before Judges Alvarez, Accurso and Lisa.

On appeal from Superior Court of New Jersey, Chancery Division, General Equity Part, Salem County, Docket No. C-0003-17.

Brown & Connery, LLP, attorneys for appellant (William M. Tambussi and Michael J. Miles, on the brief).

Michael M. Mulligan, Salem County Counsel, attorney for respondent.

The opinion of the court was delivered by

LISA, J.A.D. (retired and temporarily assigned on recall).

This case requires a determination of the appropriate timing and manner of transition to implement a reduction in the size of the Salem County Board of Chosen Freeholders (Board) from seven to five members, as approved by the voters of Salem

County in a referendum, pursuant to N.J.S.A. 40:20-20, at the November 2016 General Election.

The Salem County Clerk, defendant Gilda T. Gill, determined that five freeholder positions would appear on the 2017 Primary and General Election ballots, three to be elected for two years and two to be elected for four years, and that the terms of all current freeholders would terminate on the first Monday following the 2017 General Election. This would be followed in the future by biennial elections of freeholders, whose terms would be four years, rather than the current three years.

Plaintiff, Steven Caltabiano, Chairman of the Salem County Democratic Committee, brought this action challenging the Clerk's determination as contrary to law. In particular, he contended that specific statutory provisions would be violated by this procedure. These include a provision prohibiting, in these circumstances, the premature termination of the terms of sitting freeholders, and a provision requiring voter approval to change the terms of office and frequency of election of freeholders. In addition to seeking a judicial rejection of the Clerk's plan, plaintiff sought a declaratory judgment that the transition should be accomplished by placing on the 2017 ballot only one freeholder position. Because the terms of three freeholders expire at the end of 2017, this would fully

accomplish the reduction from seven to five members beginning in January 2018 without violating any statutory provisions.

The trial court rejected plaintiff's proposal and upheld the Clerk's position, concluding that the Clerk's action was not outside the legislative scheme and she acted within her discretion. The court entered an order dismissing the complaint.[1] We now reverse.

Prior to 1966, Salem County was governed by a large board of freeholders. Mauk v. Hoffman, 87 N.J. Super. 276, 280 (Ch. Div. 1965). Based upon the "one person — one vote" principle set forth in Reynolds v. Sims, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964), large boards, which were malapportioned, were no longer constitutionally permissible. Mauk, supra, 87 N.J. Super. at 284-86. Beginning in 1966, the Board became a

---

[1] A Verified Complaint was filed on February 10, 2017, in the Chancery Division. The case was subsequently transferred to the Law Division before the same judge. Defendant accepted as true the facts set forth in the Verified Complaint and the court likewise accepted those facts. Defendant moved to dismiss for failure to state a lawful claim. After briefing, oral argument was conducted on March 9, 2017, at the conclusion of which the court issued an oral decision. The order dismissing the complaint was entered on March 13, 2017. On that date, plaintiff filed a Notice of Appeal and a motion for expedited consideration because the filing deadline for nominating petitions for the primary election is April 3, 2017. We granted plaintiff's motion and issued a briefing schedule. Plaintiff's brief was filed on March 17, 2017; defendant's brief was filed on March 21, 2017. The Attorney General declined our invitation to participate in the appeal.

small board, consisting of seven members elected at large for three-year terms, which were staggered so two would be elected in one year, two in the next year, and three in the following year. In the ensuing fifty years, the Board has operated under this regime.

Salem County is a non-charter county, and is not a county of the first class. Accordingly, it is regulated by Article 2B of Title 40, Chapter 20, codified as N.J.S.A. 40:20-20 to -35. N.J.S.A. 40:20-20 authorizes submission to the voters of a proposition in such counties to increase or decrease the number of members of the freeholder board to three, five, seven or nine. Such a proposition, following precisely the wording required by N.J.S.A. 40:20-20, was placed on the November 2016 General Election ballot in Salem County, followed by an interpretative statement, as follows:

SALEM COUNTY QUESTION #1
(N.J.S.A. 40:20-20)

Shall the membership of the Board of Chosen Freeholders of Salem County be "decreased" from the current seven (7) members to a five (5) member board?

INTERPRETIVE STATEMENT

A "Yes" vote will decrease the size of the Salem County Board of Freeholders from seven members to five members to take effect on the Monday following the November 7, 2017 General Election (Monday, November 13,

A-2805-16T4

2017).  At the current salary of the members of the board of chosen freeholders a $50,820 annual savings will be realized by the residents of Salem County.

The question was approved, with approximately seventy-five percent of the voters in favor.

N.J.S.A. 40:20-20 also provides:

When the voters shall have voted to increase or decrease the membership of the board of chosen freeholders as provided in this section, the increase or decrease shall take effect for the next general election of chosen freeholders.

A provision follows directing the method of adding members when a proposition approved pursuant to N.J.S.A. 40:20-20 authorizes an increase in membership.  If two additional members are to be added, one shall be elected for a term of two years and the other for a term of three years at the initial election after approval of the referendum, and thereafter, each seat shall carry a three-year term.  N.J.S.A. 40:20-20a.  However, no provision directs the method of reducing membership size.  Nor has any reported court decision addressed the issue.

Resolution of the issue requires interpretation of the statutes relevant to the ballot proposition.  Thus, the issue is a legal one.  "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v.

Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Therefore, to the extent that our ultimate determination rests upon statutory interpretation, our review is de novo. Ibid.

The trial court, after canvassing various statutory provisions, concluded that the Clerk's action was not outside the statutory scheme. The court further concluded that the method the Clerk selected was within her discretionary authority. On appeal, defendant continues to argue that she acted within her discretionary bounds. To the extent that this issue is relevant, we set forth the applicable standard.

County clerks are entrusted by the Legislature with significant authority in election matters. Schundler v. Donovan, 377 N.J. Super. 339, 347 (App. Div.), aff'd o.b., 183 N.J. 383 (2005). Recognizing the role of county clerks in these matters and their expertise, courts are reluctant to substitute their judgment for "the considered choices made by the county clerks." Id. at 345. However, in exercising discretion, county clerks must act "in accordance with standards established by the Legislature." Id. at 346. "In circumstances where the county clerk's discretion is subject to review, 'it is not for a court to choose one of several reasonable courses, for that choice is precisely what the Legislature left to another.'" Sooy v. Gill, 340 N.J. Super. 401, 414 (App. Div. 2001) (quoting Richardson v.

Caputo, 46 N.J. 3, 9 (1965)). "However, where the county clerk's discretion is not 'rooted in reason, the bounds of delegated authority have been exceeded and it is the duty of the court to say so.'" Ibid. (quoting Richardson, supra, 46 N.J. at 9).

In rendering its decision, the trial court found support for the Clerk's position in N.J.S.A. 40:20-25. In our view, that reliance was misplaced. To explain why, we must provide some historical background.

Prior to the declaration of the "one person — one vote" principle, a number of New Jersey counties, including Salem, operated under a large board of freeholders, but were nevertheless statutorily authorized to choose, by referendum, to switch to a small board. N.J.S.A. 40:20-28. That section provides that "the provisions of sections 40:20-20 to 40:20-35 of this title shall be inoperative in any county until adopted by the legal voters thereof at a general election." The prescribed form of ballot question must request that voters cast a "YES" or "NO" vote for the following question:

> Shall the county of .......... reorganize its board of chosen freeholders under the provisions of sections 40:20-20 to 40:20-35 of the title Municipalities and Counties of the Revised Statutes?
>
> [N.J.S.A. 40:20-31.]

The other sections pertaining to such a referendum, i.e. to switch from a large board to a small board, contain the same description of what would be adopted, namely "the provisions of sections 40:20-20 to 40:20-35." See N.J.S.A. 40:20-29 (requirements for a petition for the ballot question), N.J.S.A. 40:20-32 (conduct of election), N.J.S.A. 40:20-33 (vote required for adoption), and N.J.S.A. 40:20-34 (resubmission).

That same phrase further appears in two other sections rounding out the transition mechanism. N.J.S.A. 40:20-21 provides for the election of members "[a]t the first election in each county adopting sections 40:20-20 to 40:20-35." It provides for unequal terms for that first election, in order to establish the three-year cycle required for staggered terms of three years for each freeholder in future elections. N.J.S.A. 40:20-21.

Finally, N.J.S.A. 40:20-25, entitled "Expiration of terms of existing members," provides:

> The terms of office of all chosen freeholders in any county then in office shall expire at the annual stated meeting next succeeding the election of chosen freeholders in such county under sections 40:20-20 to 40:20-35 of this title notwithstanding that the members of such previous boards may have been elected or appointed for a longer term.
>
> [N.J.S.A. 40:20-25 (emphasis added)]

Reading all these provisions together makes clear to us that N.J.S.A. 40:20-25 refers only to the changeover year from a large board to a small board. The phrase "under sections 40:20-20 to 40:20-35" does not describe individual sections. It describes Article 2 small-board status. That is the new type of board for which the terms of freeholders, "then in office" as "members of such previous boards" when such new boards hold their first annual stated meeting after the election of members of this new type of board, expire. Such a provision comports with the fact that members of large boards were chosen by separate constituencies from districts throughout the county, whereas the small board members are chosen at large, by a new constituency made up of all county voters.

Thus, whether by voter choice prior to 1966, or by constitutional imperative after 1966, the transition from a large board to a small board required wiping the slate clean, terminating existing terms of office, and beginning with a whole new make-up of the membership of the board.[2]

---

[2]    In the aftermath of Reynolds v. Sims, supra, and Mauk v. Hoffman, supra, decided respectively in 1964 and 1965, the Legislature enacted L. 1966, c. 62, §§ 1-4, eff. June 6, 1966, codified as N.J.S.A. 40:20-35.1 to -35.4. These provisions required Article 3 counties, i.e. those that continued to have large freeholder boards, to come into compliance with the small board requirement as of January 1, 1967, and thereafter be governed by and subject to Article 2. The transition
(continued)

However, this logic does not apply when transitioning from a small board of one size to a small board of another size (larger or smaller). In such a case, all of the existing members of the board were elected by the same county-wide constituency. There is no basis for wiping the slate clean and prematurely terminating the terms of office of existing freeholders who were elected to their three-year terms by the same constituency.

This conclusion finds support by reference to <u>N.J.S.A.</u> 40:20-20a, which provides that when increasing the membership of a small board, the new members are merely added to the existing membership. The Legislature saw no reason to wipe the slate clean and elect all new members. The increase could be easily achieved by simply having the additional members join those already there, all of whom were chosen by the same county-wide constituency. By this means, no duly elected freeholders would have their terms cut short, continuity could be maintained and major disruption avoided.

---

(continued)
arrangement provided for the early termination of terms of office of all existing members and at-large voting for seven members with initial terms of one, two, and three years, and thereafter, all three-year terms. This methodology mirrored the provisions we have discussed pertaining to transition for counties choosing to voluntarily switch to small-board Article 2 status by ballot question prior to 1966.

A-2805-16T4

In referring to N.J.S.A. 40:20-25 in its oral opinion, the trial court did not make this distinction. In quoting from the statute, the court said the terms of freeholders "then in office shall expire at the annual stated meeting next succeeding the election of chosen Freeholders[] in such counties under Section 40:20-20, which is the applicable section here." (Emphasis added). The court thus concluded that, although other statutory sections provide for three-year terms, under the rules of statutory construction, a more specific provision takes precedence over a general one. Therefore, the court reasoned, "where a county has by vote moved to change its government under Section 40:20-20 that the terms of the then existing members of the Freeholder[] Board will terminate despite the length still remaining on those terms."

For the reasons we have stated, we conclude that the court did not correctly interpret N.J.S.A. 40:20-25. Freeholder terms in non-charter counties, including Salem County, are for three years. N.J.S.A. 40:20-23. Nothing in Subtitle 2 of Title 40 "shall be construed to affect the term of office of any officer of the county, or any member of the board of chosen freeholders." N.J.S.A. 40:16-2.

The trial court's reference to "Section 40:20-20" as an individual section, rather than quoting the full phrase

11                                                              A-2805-16T4

contained in N.J.S.A. 40:20-25, "sections 40:20-20 to 40:20-35," changed the meaning of N.J.S.A. 40:20-25.  As we have explained, the full phrase does not refer to individual sections, but describes Article 2 small-board status.  Reliance on a reference in N.J.S.A. 40:20-25 to N.J.S.A. 40:20-20 individually could not provide a basis to apply the provisions of N.J.S.A. 40:20-25 to a referendum approved pursuant to N.J.S.A. 40:20-20.

The transition plan formulated by the Clerk, and approved by the trial court, would violate these sections.  There is no need to disregard these sections because they are not in conflict with any other section in Article 2.  The transition method proposed by plaintiff would accomplish the goal approved by the voters of reducing the size of the Board from seven to five members without prematurely terminating the terms of all of the existing freeholders.[3]

The Clerk's plan is further infirm in changing the terms of freeholders from three to four years and changing the times for elections from annual to biennial.  These changes can only be made by voter approval of a referendum expressly proposing the change in statutorily prescribed language.  N.J.S.A. 40:20-20.4.

---

[3]  Even for the three members whose terms are set to expire at the beginning of January 2018, the Clerk's plan would end their terms on the first Monday after the November 2017 General Election.

That was not done here. Including that change as part of the Clerk's transition plan would be unlawful.[4]

In construing statutes, courts should give effect to each provision and they should be "interpreted so they do not conflict." 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 22:34 at 395-96 (7th ed. 2007). When, within a common subject matter, some statutory provisions pertain to one set of circumstances and some to another, the judicial function is "to make every effort to harmonize them, even if they are in apparent conflict." Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14 (2005) (citations omitted). In these circumstances, the statutes should be read in pari materia and construed in a manner that, to the extent possible, will give full effect to all of the provisions.

---

[4] It appears from the colloquy at oral argument in the trial court that the interpretative statement and the transition plan were based on the mistaken belief that N.J.S.A. 40:20-20.5 was the operative transition directive. That section provides for early termination of all existing terms, change to four-year terms, and biennial elections. On its face, N.J.S.A. 40:20-20.5 applies only to the first election of members after a favorable vote on a proposition approved pursuant to "section 6 of this amendatory and supplemental act," i.e. pursuant to N.J.S.A. 40:20-20.4. See N.J.S.A. 40:20-20.5 n. 1. N.J.S.A. 40:20-20.4 allows a ballot question to increase terms from three to four years and provides for biennial elections with staggered terms. In the trial court, the Clerk tacitly abandoned this position, recognizing it was erroneous. This incorrect reliance was the apparent basis underpinning the Clerk's transition plan.

Walcott v. Allstate New Jersey Ins. Co., 376 <u>N.J. Super.</u> 384, 391 (App. Div. 2005).

We are confronted here with a statutory scheme governing Article 2 counties that contains two subsets of provisions pertaining to changes in the size of the board. One, a major change, is from the old large freeholder boards to the modern small boards. The other is a relatively minor change of adjusting the membership of a small board within a very narrow range allowable. In the former, the freeholders before and after the change are elected by different constituencies. In the latter, the before-and-after freeholders are elected by the same constituency. Transition procedures should be designed to effect the transitions in these respective changes smoothly, with the least disruption possible, and in a manner that comports with the apparent legislative intent behind the authorization for or requirement for making the change in the first place. And, of course, the transition methodology should avoid rendering some statutory provisions meaningless and patently violating others.

The Clerk's plan, approved by the trial court, does not comport with these principles. The plan proposed by plaintiff does.

This brings us to the question of whether the Clerk had discretionary authority to direct her plan. As a general proposition, when there is no statutory mandate as to a procedure, county clerks have discretion in how to proceed. Schundler, supra, 377 N.J. Super. at 343. The trial court found that the Clerk's action was not outside the statutory scheme, thus providing a basis for countenance of the discretionary determination made.

However, we have reached a contrary conclusion, namely that the Clerk's determination was outside the statutory scheme. Accordingly, that determination cannot withstand the "rooted in reason" test. We are constrained to hold that the Clerk mistakenly exercised any discretion she may have had in formulating her plan. We do not suggest in any manner that there was an absence of good faith here. However, our analysis of the applicable statutory provisions and rules of statutory construction lead us to the conclusion that her plan must be set aside.

Finally, we comment on the interpretive statement. Such a statement was not needed here because the wording of the question was perfectly clear. The fact that the interpretative statement included incorrect information, namely that the change from seven to five members would take effect on the Monday

15                                                    A-2805-16T4

following the November 7, 2017 general election, does not change the result. The thrust of what the voters were deciding was whether to downsize the board for the long term. The transition arrangements were incidental and relatively insignificant. See Rooney v. McEachern, 128 N.J. Super. 578, 588 (Law Div.), aff'd o.b., 65 N.J. 256 (1974).

The judgment of the trial court is reversed. The Clerk shall place on the Primary and General Election ballots for 2017 one freeholder position to be elected for a three-year term. The terms of the three freeholders elected in 2014 shall expire by operation of law at the time of the organizational meeting of the board in January 2018. The remaining terms of the other freeholders shall be unaffected.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION